FULL NAME
Mark R. Frisby
COMMITTED NAME (if different)

FULL ADDRESS INCLUDING NAME OF INSTITUTION
210391 P.O. Box 3535 Norco, CA 92860
CDC# BD8356
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT
JUL - 8 2019
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Mark R. Frisby

PLAINTIFF,

The State of California, Department of Justice

DEFENDANT(S).

CASE NUMBER EDCV19-01249-DSF-MAA
*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒ No

2. If your answer to "1." is yes, how many? ______________

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

RECEIVED
CLERK, U.S. DISTRICT COURT
JUL - 3 2019
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

a. Parties to this previous lawsuit:
Plaintiff ______________________________

Defendants ______________________________

b. Court ______________________________

c. Docket or case number ______________________________

d. Name of judge to whom case was assigned ______________________________

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) ______________________________

f. Issues raised: ______________________________

g. Approximate date of filing lawsuit: ______________________________

h. Approximate date of disposition ______________________________

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes ☒ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes ☐ No

If your answer is no, explain why not Writ of Habeus Corpus filed with the 2nd Appelate district division 5

3. Is the grievance procedure completed? ☐ Yes ☒ No

If your answer is no, explain why not Awaiting response to challenge of the conviction associated with this complaint.

4. Please attach copies of papers related to the grievance procedure.

**C. JURISDICTION**

This complaint alleges that the civil rights of plaintiff Mark R. Frisby
(print plaintiff's name)

who presently resides at Norco CRC Prison, Norco CA 92860,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at Los Angeles and San Bernadino Counties.
(institution/city where violation occurred)

on (date or dates) 13-Aug-2015 to Present (Claim I) (Claim II), ______ (Claim III).

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant The State of California Department of Justice resides or works at
(full name of first defendant)
300 S. Spring Street, Los Angeles CA 90013
(full address of first defendant)
The Department of Justice
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☒ official capacity.

Explain how this defendant was acting under color of law:
Defendant missused its authority to deny me rights protected by the Constitution of the United States and amendments within

2. Defendant ______ resides or works at
(full name of first defendant)
______
(full address of first defendant)
______
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):. ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______

3. Defendant ______ resides or works at
(full name of first defendant)
______
(full address of first defendant)
______
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______

4. Defendant ______________________________ resides or works at
(full name of first defendant)

______________________________
(full address of first defendant)

______________________________
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______________________________

______________________________

5. Defendant ______________________________ resides or works at
(full name of first defendant)

______________________________
(full address of first defendant)

______________________________
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______________________________

______________________________

D. CLAIMS*

CLAIM I

The following civil right has been violated:

My right to remain silent. My right to an attorney. My right to the pursuit of happiness. My right to a fair trial My right to life liberty and the pursuit of happiness.
8th Amendment
5th Amendment
The state imposed cruel and unusual punishment.
1st Amendment

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

The Judicial branch of the State of California did act to:
1. Impose cruel and unusual punishment on me. The State of California held me in a cell and denied me clothing, showers, food, hygene, sleep, an attorney and access to reading and writing material. The State of California misdiagnosed me with multiple mental illnesses and made threats of sexual assault and genital mutilation while holding me in custody at Los Angeles and San Bernadino County jails.
2. The Judicial branch of the State of California violated my Miranda rights by attempting to ellicit a confession from me during the aforementioned acts for a period of nearly two years from 13 Aug 2015 to 23 July 2017
3. The Judicial branch of the State of California caused me to suffer mental anguish and loss of wages during the aforementioned period and on to my continued incarceration as of 6-21-2019.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

Miranda v. Arizona 384 U.S. 436 (1966)

I believe that I am entitled to a reversal of my conviction for case no#BD8356 on grounds that it was obtained illegally, and that reversal be recorded.

I believe that I am entitled to monetary compensation for the loss of income and the mental anguish suffered.

I believe that I am entitled to $ 200 million dollars in damages for lost wages

I believe I am entitled to $200 million dollars in punitive damages.

The Judicial branch of California spent millions of dollars to fund programs and employees that served to violate my civil rights; in addition,

The Judicial branch of the State of California used my inability to afford bail and private councel to violate my civil rights. My record should be cleared to reverse the slander to my name and medical and criminal records.

I believe that I am entitled to one billion dollars ($1 billion) for compensation for sexual harassment.

Petitioner is seeking a total of 1.4 billion dollars

Petitioner is aware that a conviction reversal cannot be obtained via Civil Rights Complaint

21 June 2019
(Date)

[signature]
(Signature of Plaintiff)

The following Pages
serve as evidence in support
of Civil Rights Complaint filed by
Mark R. Frisby CDC# BD8356 on June 21 2019
In Support of and Pursuant to 42 U.S.C. §1983

In simmilar cases:

Brooks v. Florida, 389 U.S. 413 (1967)

Ashcraft v. Tennessee, 322 U.S. 143 (1944)

Ziang Sung Wan v. U.S., 266 U.S. 1 (1924)

Davis v. North Carolina, 384 U.S. 737 (1966)

Chambers v. Florida, 309 U.S. 227 (1940)

Turner v. Pennsylvania, 338 U.S. 62 (1949)

Fikes v. Alabama, 352 U.S. 191 (1957)

Extended periods of isolation and abuse were used to illicit a confession.

Petitioner affirms that the State subjected him to harsher abuse and longer periods of isolation without clothing in an attempt to illicit a confession.

Petitioner is seeking monetary compensation for the civil rights violations that he incurred by the State.

Petitioner contends that the state was unable to force a confession, therefore induced greater harm and punishment upon petitioner in a failed attempt to illicit a confession. For a period of two (2) years

Petitioner contends that although the State of California was unable to force a confession, the State of California is liable for damages due to the Miranda violations and cruel and unusual punishment inflicted.

21 Jun 2019
Date

[signature]
Signature of Plaintiff

Evidence in Support Civil Rights Complaint Pursuant to 42 U.S.C. § 1983

Name: Mark R. Frisby
Address: CDC# BD8356 210/39L
P.O. Box 3535
Norco, CA 92860

CDC or ID Number: BD8356

Evidence in Support of Civil Rights Complaint Pursuant to 42 U.S.C. § 1983

6-21-19
Date

~~Superior Court of the State of California Los Angeles County~~
~~Second Appellate Division Los Angeles County~~
(Court)

~~Mark R. Frisby~~
Petitioner

vs.

~~The State of California~~
Respondent

~~PETITION FOR WRIT OF HABEAS CORPUS~~

~~(To be supplied by the Clerk of the Court)~~

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the superior court, you should file it in the county that made the order.
- If you are challenging the conditions of your confinement and are filing this petition in the superior court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal in paper form and you are an attorney, file the original and 4 copies of the petition and, if separately bound, 1 set of any supporting documents (unless the court orders otherwise by local rule or in a specific case). If you are filing this petition in the Court of Appeal electronically and you are an attorney, follow the requirements of the local rules of court for electronically filed documents. If you are filing this petition in the Court of Appeal and you are *not* represented by an attorney, file the original and one set of any supporting documents.
- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2007). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

109 pages total



Date 6-21-19

Signed [signature]

This petition concerns:

- [X] A conviction
- [ ] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [X] Other *(specify)*: Evidence in Support of Civil Rights Complaint

6-21-19

1. Your name: Mark R. Frisby
2. Where are you incarcerated? CRC Prison, Norco, California
3. Why are you in custody? [X] Criminal conviction [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon"). Assault with a deadly weapon + GBI

b. Penal or other code sections: Penal Code § 245(a)(1) and 12022.7(a)

c. Name and location of sentencing or committing court:
Clara Shortridge Foltz Criminal Justice Center
210 W Temple St
Los Angeles CA

d. Case number: BA438972

e. Date convicted or committed: 6/22/17

f. Date sentenced: 7/20/17

g. Length of sentence: 7 years

h. When do you expect to be released? 6/3/21

i. Were you represented by counsel in the trial court? [X] Yes [ ] No *If yes, state the attorney's name and address:*
Patric S. Thomason
320 W Temple St #35
Los Angeles, CA 90012

4. What was the LAST plea you entered? *(Check one):*

[X] Not guilty [ ] Guilty [ ] Nolo contendere [ ] Other: ______

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

~~HC-001~~

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

Lack of evidence that petitioner was factually guilty of Charges. Procedural misconduct in collecting and supressing evidence favorable to the defendant.
~~ap~~ appellate council was ineffective for not asserting this claim on appeal. In re Spears (1984) 157 ~~CA3~~ CA3d 1203, 1209 missing evidence submitted. People v. Duvall (1995) 9 C4th 464, 474; In re Clark (1993) 5 C4th 750, 766

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Although defendant council sided with prosecution in arguing that defendant was guilty of assault with a deadly weapon, their was a lack of evidence in support of.
~~(Smith v. Robbins, 528 U.S. 259 (2000))~~
No fingerprint or DNA evidence was produced despite defendant waiving time at the trial Courts request with instructions that DNA evidence could exonerate. "The state failed to disclose lack of (DNA and fingerprint) evidence favorable to the accused." Brady V. Maryland, 373 U.S. 83 (1963). kyles v. Whitley, 514 U.S. 419 (1995).

Vincent Ortiz committed purgery and the trial Court allowed his testimony. Giglio v. U.S. 405 U.S. 150 (1972).

The State destroyed or suppresed toxicology reports that would have exonerated the defendant. "Bad faith in not providing a toxicology report for the defendant. Arizona v. Youngblood 488 U.S. 51 (1988)

The resulting procedural misconduct resulting in a lack of evidence that would have exonerated the defendant.
Insufficient evidence beyond a reasonable doubt ~~not~~ proven. Jackson v. Virginia 443 U.S. 307 (1979) Exhibit 11 pg 175

b. Supporting cases, rules, or other authority *(optional)*:
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

Brady V. Maryland 373 U.S 83 (1963)
Kyles v. Whitley 514 U.S. 419 (1995)
Giglio V. U.S. 405 U.S. 150 (1972)
Arizona v. Youngblood 488 U.S. 51 (1988)
Jackson v. Virginia 443 U.S. 307 (1979)

7. Ground 2 or Ground ______ (if applicable):

Additional Grounds Attached
Petitioner was subject to cruel and unusual Punishment.
Miranda Violation - Exhibit 2 page # 13

a. Supporting facts:

Prosecution failed to prove beyond a reasonable doubt but only with the assistance of the defense council, Pat Thomason, was able to raise a reasonable suspicion with his unsubstantiated support. Closing arguments which proved damaging to the petitioner especially since the untrue evidence was introduced against the petitioner by his own attorney. "Insufficient evidence beyond a reasonable doubt not proven." Jackson v. Virginia 443 U.S. 307 (1979) - Exhibit 11

Petitioner ~~he me~~ was wrongfully accused of having a deteriorating mental state and was subject to misdiagnosis by state employees sexual harassment, Miranda violations and Feretta violations. Abuse of power and authority is prevalant in the wide scope of mental health claims made against the petitioner following his refusal to take a plea bargain including sexual harrasment, False diagnosis, Miranda violations, threats of forced medication, recommendations to state mental institution, denial of council, Feretta violation. Petitioner was sexually harassed by (JBT) Jail Based treatment employee, Ruiz, and denied clothing. Dr. Rotherg further supported the abuse when petitioner refused to confess, stating "Mr. Frisby was not a cooperative historian. Exhibit 8 pg 000053. Petitioner was denied access to legal resources durring this time.
Although the Judge claims the evidence is inadmissable and therefore is not a Miranda Violation, The doctor patient interviews are conducted in common areas and are used to illicit forced confessions with doctors offering plea deals and slandering interviewees in their reports. True - Mark Frisby is a Test Engineer and a certified Wind Turbine Techniton. False - Mark Frisby is a homeless Wind Surfer. The False reports create true court decisions.

b. Supporting cases, rules, or other authority:

Faretta v. California, 422 U.S. 806 (1975)
Strickland v. Washington 466 U.S. 668 (1984
Baker v. Wingo 407 U.S. 514 (1972)
Vermont v. Brillion 129 S. Ct. 1283 (2009)
To be fair by comparison Supreme Court Justice C. Thomas was charged with sexual harassment for mentioning a pubic hair. L.A. County officials and employees including Ruiz kept me in a cold cell with no clothing for months at a time and made threats of rape and genital mutilation. Stating that if I took a plea agreement that all could be over. Miranda Violation.

8. Did you appeal from the conviction, sentence, or commitment? [X] Yes [ ] No If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"): Court of Appeal of the State of California, Second Appelate District, Division 5

b. Result: Denied c. Date of decision: 9/13/18

d. Case number or citation of opinion, if known: B284198

e. Issues raised: (1) Doyle Error - Prosecution questioned petitioner about how many ~~(2)~~ times he had plead innocent to the charges.

(3) 

f. Were you represented by counsel on appeal? [X] Yes [ ] No If yes, state the attorney's name and address, if known: Teresa Biagini 1321 S. Winchester Blvd, #132 San Jose, CA 95128

9. Did you seek review in the California Supreme Court? [ ] Yes [X] No If yes, give the following information:

a. Result: b. Date of decision:

c. Case number or citation of opinion, if known:

d. Issues raised: (1)

(2)

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Ineffective assistance of council, petitioner requested that he be allowed to procede in pro-per, His request was declined

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500.) Explain what administrative review you sought or explain why you did not seek such review:

6-21-19 | Petitioner sought relief in open court
Petitioner was ordered to be placed on medication
by Judge Leslie Swain

Petitioner shows consistent evidence of systematic violations of civil rights

b. Did you seek the highest level of administrative review available? [ ] Yes [ ] No

*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? [X] Yes If yes, continue with number 13. [ ] No If no, skip to number 15.

13 a. (1) Name of court: Clara Shortridge Foltz Criminal Justice Center - Los Angeles

(2) Nature of proceeding (for example, "habeas corpus petition"): Habeus Corpus

(3) Issues raised: (a) Ineffective assistance of council, Maranda violation

(b) Farretta violation

(4) Result (attach order or explain why unavailable): no response as of 4-11-19

(5) Date of decision: June 1, 2019 denied, Requesting evidenciary review hearing

b. (1) Name of court: Clara Shortridge Foltz Justice Center - Los Angeles County Superior Court

(2) Nature of proceeding:

(3) Issues raised: (a)

(b)

(4) Result *(attach order or explain why unavailable):*

(5) Date of decision:

c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel? [ ] Yes [X] No If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? [ ] Yes [X] No If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 6-10-19

▶ [signature]
(SIGNATURE OF PETITIONER)

Factual Background - On August/13 Vincent Ortiz, a repair man suffered some kind of head injury and injury to his hand Neighbor Miguel Simano and later Vincent Ortiz as well accused Mark Frisby of hitting Vincent Ortiz with a hammer. Mark Frisby denied the allegations stating that he never struck or assaulted Vincent Ortiz. Although also not being on the scene or actually witnessing the incident, whatever it was, be it an assault by a different person or a workplace injury, neighbor Rosa also later came forth to report to Los Angeles police on the scene that Mark Frisby had somehow caused Vincent Ortiz' injury stating "it was him, it was him." Although both being U.S. citizens Vincent Ortiz and Miguel Samano both refused to testify in English. District Attorney Justin Ford used this to his advantage in soliciting testimony that Mark Frisby was to blame for the injury sustained by Vincent Ortiz. The neighbor Rosa was never called to testify as to the validity of her accusations Although the prosecutions case relied on accusations that Mark Frisby was intoxicated and irrational, there is no toxicology report or arrest report however supporting these accusations. There is a toxicology report however supporting the fact that Vincent Ortiz was intoxicated that day. Vincent Ortiz testified that he had not been consuming alcohol that day and that he in fact never drinks despite evidence to the contrary. No witnesses were called to rebuke Vincent Ortiz' testimony accept Mark Frisby. Attorney Pat Thomason did entirely rebuke Mark Frisby's testimony in closing argument. (People v. Frisby (Sep 6, 2018) [2018 WL 4233708]

## Additional Grounds For Relief

In general Petitioner claims that his claims could not have been raised before trial or on appeal because the court denied him his right to represent himself.

(1) Following multiple unremedied Civil and Constitutional violations petitioner was left with no other means but to seek relief via habeus Corpus.

(2) Petitioner claims that the trial court had legal authority to deny his right to self representation, however it misused its authority in denying petitioner his right to self representation.

(3) Petitioner proves that trial court provided ineffective assistance of council multiple times having left petitioner with no representation at all, several times through a course of ten attorneys nine of who left the petitioner unrepresented and trial attorney Pat Thomason who failed to adequatley represent his client.

(4) Petitioner proves that the trial court did deny his right to speedy trial and that cruel and unusual punishment took place while his speedy trial rights were denied.

(1.) Following multiple unremedied "Civil and Constitutional violations, petitioner was left with no other means but to seek relief via habeus corpus.

Petitioner waived his right to council, Faretta Waiver, on Dec. 23, 2015, a little over four months after being charged. At that time petitioner had innefectivley been represented by four attorneys. The attorney appointed to the petitioner that day was a no show. Petitioners right to council was violated petitioners right to speedy trial was violated the court offered no relief for the petitioner accept granting him the right to represent himself.

The trial court then revoked petitioners right to represent himself on Feb. 25, 2016 once again denying petitioner, Mark Frisby, means to seek relief for speedy trial and Civil and Constitutional violations.

Between Feb. 25, 2016 and June 25, 2016 the court appointed four more attorneys to represent Mark Frisby, all of whom quit to either, go on vacation, go on Maternity leave, or gave petitioner no excuse at all as to why they could not represent him at trial. Pat Thomason was assigned to represent petitioner on June 25, 2016 petitioners tenth ineffective court appointed attorney. Petitioner did not retain the option to raise issues of Civil Rights and speedy trial violations by any other means since the court had denied his right to represent himself.

In general petitioner was placed in a segregated maximum security environment following his conviction and was denied proper representation on appeal. Petitioner attempted to reopen his appeal to address the issues that the court appointed attorneys refused to address. Petitioner was denied - Feb 22 2019

Petitioner claims that his claims could not have been raised on appeal because court appointed attorney refused to argue them leaving "no other means" but to seek relief via habeus Corpus.

Petitioner proves that the trial court systematically and prejudicially denied him effective council and that attorney Pat Thomason was a continuation of that prejudicial bias.

(2) Petitioner claims that the trial court had legal authority to deny his right to self representation, however it misused its authority in denying petitioner his right to self representation.
Petitioner claims that he was found fit to represent himself on Dec 23 2015 by judge Robert C. Vanderbuilt.
Petitioner had already undergone two psychiatric evaluations.
No evidence was brought forth to support a claim that petitioner, at any time, had a "deteriorating mental state" as claimed by the prosecuting attorney Virginia Advesian.
Petitioner was denied the right to self represent even though he was competent to stand trial and was properly advised of the dangers and disadvantages of self representation. (Faretta v. California, 422 U.S 806 (1975).
Judge Leslie Swain made no finding of inability to self represent but stated "I feel that I wouldn't be doing my job if I wasn't certain that you had the capacity to competently represent yourself. I mean, especially in your case, where it appears that you've taken, I shouldn't say little interest... I just want to make sure that you are the best."
This argument is to question my procedural ability not my mental capacity. It is the petitioners claim that the trial court at that time had improperly used its descretion in an attempt to deny petitioners right to self representation. Bar the petitioner having passed the state bar exam, the trial court was looking for a loop hole in denying petitioner his right to self representation.
Judge Leslie Swain continues to say, before ordering a competency test, "I shouldn't say little interest, but where you have not been at least, appearing to wish to zealously defend yourself in this litigation." Petitioner had signed a Faretta waiver at that time and was preparing for trial in fact. Pettioner was expecting jouray selection to begin bar the defence droping the false charges. Petitioner claims that he showed great interest at the time for representing himself and although Judge Leslie Swain should not have said "little interest," Judge Leslie Swain did say little interest. Petitioner further claims that the trial court showed an expressed interest in denying his right to self representation. Repeated mental exams are evidence that the court was seeking a loophole in denying petitioner his right to represent himself. However, bar idiosynchronic opinions petitioner was found fit for trial. Judge Swain, Justin Ford, Verginia Advesian and Pat Thomas were not subject to psychiatric evaluations although their performance and ability to intelligently practice law suggests inferior ability.

*(Printed with black ink on a zerox copy machine)*

③ Petitioner claims that the trial court provided ineffective assistance of council "multiple times" having left petitioner with no representation at all several times through a course of ten attorneys nine of who left the petitioner unrepresented and trial attorney Pat Thomas who failed to adequatley represent his client.

Pat Thomas court appointed attorney for the petitioner was not effective. Here, trial counsel argued in his closing argument in support of prosecutions claims of "a wild and crazy act" however there was no support in that claim, that is no room whatsoever in that claim, for the innocence of the defendant in reguards to the charges of assault with a deadly weapon. An effective true statement that the defendant was not acting "wild and crazy" and that the defendant never assaulted Vincent Ortiz would have been consistent with proper representation. Condemning the defendant of assault with a deadly weapon is an act reserved for the prosecution. Petitioner claims that court appointed attorney Pat Thomas acted on behalf of the prosecution by making this argument.

Petitioner claims that, and there is an assault conviction with a GBI enhancement, Pat Thomas' testimony in closing arguments to the jury of a "wild and crazy" assault with a hammer was more than "reasonable probability that, but for councel's unprofessional errors, the result of the proceeding would have been different." (People v. Whorton (1991) 53 cal.3d 522, 575)

Petitioner affirms that prejudice was established when Pat Thomas confirmed the defences testimony of the act of assault with a deadly weapon. (People v. Hinds (2003) 108 Cal.App.4th 897, 900-901.)

Page 5 of 8 (00069) Liberty Health care employee describes some of the conditions of cruel and unusual punishment administered by the State of California including - No hygene products, No showers, No Clothing and petitioner Mark Frisby being held in that cell without being let out once and often for up to three days without water for over 100 days straight.

This is following the continued sexual harassment by Los Angeles County jail psychiatrist, Ruiz, who had ordered that Mark Frisby be kept naked in his cell for months at a time and constantly threatened petitioner Mark Frisby with genital mutillation.

Petitioner claims that council made no effort to challenge his conditions of confinement and that the harrassment and civil rights violations occuring in Los Angeles County and San Bernadino County are evidence of ineffective assistance of council.

*(Printed with black ink on a zerox copy machine)*

(1.) Petitioner claims that the trial court did deny his right to speedy trial and that cruel and unusual punishment took place while his speedy trial rights were denied.
Although the Superior Court shows no intention of accepting or granting petitioner relief via habeus corpus on grounds of a speedy trial violation, petitioner asserts that the court showed prejudice to the defendant and that their was unreasonable length in delaying trial dispite petitioners requests not to waive time, petitioners efforts to represent himself and cruel and unusual punishment by Los Angeles County.
Although the Superior Court claims that the petitioners "arguments regarding a violation are somewhat incomprehensible."
Petitioner asserts that they occured none the less.
Petitioner claims that the Superior Court not only failed at protecting his rights as provided in Penal Code sections § 1381 and 1389 and by the federal and state Constitution, the violations only partially described in Barker v. Wingo (1972) 407 U.S. 514 were intentional once the petitioner expressly refused to waive time for trial.
Petitioner claims that the delay in trial and the cruel and unusual punishment resulted in an unfair trail. Notwithstanding ineffective assistance of council petitioner was denied the right to self represent and therefore submit these claims at and before trial other than his verbal objection which consequently resulted in Judge Leslie Swain ordering petitioner Mark Frisby to be placed on forced medication if necessary. Petitioner asserts that he was denied the right to represent himself and that court appointed council did not raise these claims so that his only means of relief are via habeus corpus.
Petitioner shows that court ordered medication was an illegal attempt to obtain a guilty plea. G2-G3.
Petitioner states a clear violation of his miranda rights, his right to speedy trial and his rights inclusive to representation G2-G3.
The Superior Court by order of Judge Leslie Swain reinstated criminal proceedings finding no civil rights violations, G2-G3

(Printed with black ink on a zerox copy machine)

# Prayer for Relief

1. Petitioner claims ability to show that the Superior Court of Los Angeles County and employees of the State of California acted with [illegible] his right to due process.

2. Petitioner has proven that closing arguments by public defender Pat Thomason were harmful beyond repair to his defense.

3. Petitioner has presented evidence that without his testimony, that is the petitioners own testimony, that it is likley the jury would have found him guilty on all charges.

4. Petitioner request that the jury's decision of guilty be reversed due to ineffective assistance of council and other grounds stated in his habeus corpus motion.

5. Petitioner requests that the court consider loss of evidence and Miranda violations, although no confession was obtained, in finding due process error on behalf of Petitioner and to the [illegible] of the prosecution and trial court.

6. Per - Cal Rules of Ct 4.551(a)(4)(A), (c)-(d), Petitioner requests that the court issue an order to show cause. in finding the petitioners claims all or in part to be true factual and relavent within the Rules of Court, finding no procedural bar to relief.

(Printed in black ink on a [illegible] copy machine)

Mark Laisby 6-10-19

[signature]

# EXHIBIT COVER PAGE

1

EXHIBIT

**DESCRIPTION OF THIS EXHIBIT:** Defendant Mark Frisby signed a Faretta Waiver 2-23-2015

**NUMBER OF PAGES TO THIS EXHIBIT:** 3 **PAGES.**
marked 000023 and 000024 and 000025

JURISDICTION: (Check only one)

- [ ] CDCR Administrative Appeal
- [ ] California Victim Compensation And Government Claims Board
- [ ] Municipal Court
- [x] Superior Court
- [ ] Appellate Court
- [ ] State Supreme
- [ ] United States District Court
- [ ] United States Circuit Court
- [ ] United States Supreme Court

Approved for use with Judicial Council forms [illegible]

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | FILED<br>Superior Court of California<br>County of Los Angeles<br>DEC 23 2015<br>Sherri R. Carter, Executive Officer/Clerk<br>By ________, Deputy<br>Josenian Perez |
| PLAINTIFF:<br>PEOPLE OF THE STATE OF CALIFORNIA | |
| DEFENDANT:<br>Mark Frisby | |
| **ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL (*Faretta* Waiver)** | CASE NUMBER: BA438972-01 / DEPT: 38 |

Fill out this form if you wish to act as your own attorney (*in propria persona* or "pro per"). Initial the box for each item only if you understand and agree with it, and sign and date the form at the end where it says "DEFENDANT'S SIGNATURE." If you have any questions about anything on this form, ask your attorney, if you have one, or the judge. The judge may ask you questions about your decision to give up your right to be represented by a professional attorney.

## CONSTITUTIONAL RIGHTS

**Initials**

1. I am the defendant in the above-entitled case. I can read and write. I understand that my constitutional rights include the following: [initialed]

A. **Right to an Attorney** — I understand that I have an absolute right to be represented by an attorney at all stages of the proceedings and, if I do not have the money to pay for an attorney, that one will be appointed for me by the Court at no cost. [initialed]

B. **Right to a Speedy and Public Jury Trial** — I understand that I have a right to a speedy and public trial by a jury of twelve citizens drawn from the community. [initialed]

C. **Right to Subpoena Witnesses and Records** — I understand that I have the right to the reasonable use of the subpoena power of the Court, at no cost to me, to subpoena any witnesses or any documents that I may need in my defense. [initialed]

D. **Right to Confront And Cross-Examine Witnesses** — I understand that I have the right to confront in open court all witnesses who will be called to testify against me, and that I have the right to cross-examine those witnesses at the time of trial. [initialed]

E. **Right Against Self-Incrimination** — I understand that I cannot be compelled to testify at the trial, but that I have the right to testify at my trial if I wish to do so. [initialed]

F. **Right to be Released on Bail** — I understand that I may have the right to be released from jail pending trial on reasonable bail. [initialed]

G. **Right to Self-Representation** — I understand that I have a right to act as my own attorney and may waive my right to the assistance of a professional attorney. I further understand that if I choose to act as my own attorney, I will have to conduct my own defense WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY. [initialed]

## PERSONAL INFORMATION

2. In support of my request to act as my own attorney, I offer the Court the following personal information:

A. Age: 37

B. The highest educational level I have reached is : 12

C. Legal education I have received: ——

| Case | Court | Year | Result |
|---|---|---|---|
| Case | Court | Year | Result |
| Case | Court | Year | Result |

**DANGERS AND DISADVANTAGES OF SELF-REPRESENTATION** **Initials**

3. I understand that there are many dangers and disadvantages in not having a professional attorney represent me. I understand that among those dangers and disadvantages are the following:

A. I understand that if I act as my own attorney, it will be necessary for me, WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY, to follow all of the requirements of the criminal law, criminal procedure, law of evidence, and rules of court.

B. I understand that the case against me will be handled by a prosecutor who is an experienced trial attorney, and that I will not be entitled to special consideration or assistance by the prosecutor prior to or during the course of the trial.

C. I understand that if I act as my own attorney, it will be necessary for me WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY, to conduct my own trial, consisting of, but not limited to: making pretrial motions, selecting a jury, making an opening statement, cross-examining the witnesses for the prosecution, subpoenaing and presenting my own witnesses, making appropriate objections and motions during the course of the trial, preparing and presenting proposed jury instructions to the Court, making the final argument, and, in the event of a conviction, making appropriate motions after trial and representing myself at the time of any probation or sentencing hearing.

D. I understand that I will not and cannot expect to receive any special consideration or assistance from the Court. I further understand that the Court is not permitted to and will not answer any questions I may have concerning how I should proceed, what law might apply or the correct procedure.

E. I understand that if I ask for any additional money over the initial amount granted by the Court, I must use that money only for my defense and I will be required to keep and show the Court receipts for anything I have purchased with the money granted to me.

F. I understand that if I am in jail, it will be more difficult for me to contact witnesses and investigate my case. I understand that I will have limited access to a telephone, which will make preparations for trial more difficult, and that I will be provided no more access to the law library than any other inmate who acts as his own attorney, and that access is limited. I understand that I must be familiar with Los Angeles Superior Court Rule 8.42, which explains the rules that defendants who act as their own attorney at the Los Angeles County Jail must follow.

G. I understand that no continuance of the trial will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied.

H. I understand that depending on the stage of my case, if I change my mind and request an attorney to handle my case, the Court may deny this request and that I may have to proceed with the trial without an attorney.

I. I understand that in conducting the trial, I will be limited in my movements in the courtroom. All documents, for example, will be handed to witnesses when necessary through the bailiff. I will be required to remain in my seat at counsel table and will not have free movement in the courtroom.

J. I understand that I must not act disrespectfully in court. I understand that the Judge may terminate my right to act as my own attorney in the event that I engage in serious misconduct or obstruct the conduct and progress of the trial. I understand that if my right to act as my own attorney is terminated, I may have to be represented by an attorney, appointed by the Judge, who will then take over the case at whatever stage the case may be in.

**Initials**

K. I understand that if at some point an appointed attorney does take over my case, that attorney may be at a disadvantage and that such a disadvantage will not be considered an issue on appeal.

L. I understand that misconduct occurring outside of court may also result in restriction or termination of my right to act as my own attorney. I also understand that acting as my own attorney will not shield me from disciplinary actions within the jail, and that I will be subject to the same disciplinary measures as all other inmates for misconduct occurring in the jail.

M. I understand that any defendant who is represented by an attorney prior to being convicted may complain as part of a timely appeal that the attorney's assistance was ineffective. I understand that by acting as my own attorney, I am giving up any right to claim on appeal that I had ineffective assistance of counsel.

## CHARGES AND CONSEQUENCES

4. I understand that I am giving up having a professional attorney explain to me what crimes I am charged with, and any possible legal defenses I may have to those crimes.

5. I understand that I am giving up having a professional attorney explain to me how and which charges and enhancements require proof of general criminal intent, which charges require proof of a specific intent or mental state, and what state of mind may apply to any defenses I may have.

6. I understand that I am giving up having a professional attorney determine what facts must be proved before I can be found guilty and that if I do not know what those facts are, I will have to learn about those facts on my own.

7. I understand that I am giving up having a professional attorney determine, if I am convicted, what post-trial motions and sentencing options I may have, and to present those motions and options to the Court.

## COURT'S ADVICE AND RECOMMENDATION

8. I understand that it is the advice and recommendation of this Court that I do not act as my own attorney and that I accept a court-appointed attorney. I understand that if I accept a court-appointed attorney, a trial attorney will be assigned to defend me. I understand that the attorney would be able to investigate my case, file pretrial motions, conduct the trial, and generally advise me on what to do.

9. I understand that this written request to act as my own attorney will be filed with and become part of the court case file. I further understand that on any appeal that may be taken from a conviction, or upon the filing of a petition for an extraordinary writ, this request will be forwarded to any court of appeal and will be considered by that court in determining whether I knowingly and intelligently waived my right to an attorney.

10. I understand all that I have read and understood all that the Court has told me. Having in mind all that I have been advised and all of the dangers and disadvantages of acting as my own attorney, it is still my request that I act as my own attorney.

**I hereby certify that I have read, understood and considered all of the above warnings included in this petition, and I still want to act as my own attorney. I freely and voluntarily give up my right to have a professional attorney represent me.**

Signed: ______________________ Dated: 12/22/15
DEFENDANT'S SIGNATURE

# EXHIBIT COVER PAGE

2

EXHIBIT

**DESCRIPTION OF THIS EXHIBIT:** Trial Day 2-25-16 Defendant Mark Frisby was denied a speedy trial and denied his Faretta Rights. Pg. A-4 lines 1-7- court ordered additional evaluations in an attempt to illicit a confession and deny speedy trial.

**NUMBER OF PAGES TO THIS EXHIBIT:** 4 **PAGES.**

Labeled: A1, A2, A3, A4

JURISDICTION: (Check only one)

- [ ] CDCR Administrative Appeal
- [ ] California Victim Compensation And Government Claims Board
- [ ] Municipal Court
- [x] Superior Court
- [ ] Appellate Court
- [ ] State Supreme
- [ ] United States District Court
- [ ] United States Circuit Court
- [ ] United States Supreme Court

Approved for use with Judicial Council forms Jan 1997

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA THURSDAY, FEBRUARY 25, 2016
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, PRESENT IN PROPRIA PERSONA; VERGINIA AVEDISSIAN, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972.

MS. AVEDISSIAN: VERGINIA AVEDISSIAN FOR THE PEOPLE.

THE COURT: AND MR. FRISBY IS PRESENT IN PRO PER. HOW ARE YOU DOING TODAY, MR. FRISBY?

THE DEFENDANT: GREAT THANKS.

THE COURT: ALL RIGHT. I HAVE RECEIVED SOME DOCUMENTATION FROM THE JAIL ABOUT MR. FRISBY BEING IN A HIGH OBSERVATION UNIT OF THE JAIL BASED UPON DETERIORATION OF HIS MENTAL HEALTH. BASED UPON THIS DOCUMENTATION I BELIEVE IT IS INCUMBENT UPON THE COURT AT THIS TIME TO DECLARE A DOUBT ABOUT THE DEFENDANT'S COMPETENCY TO STAND TRIAL. I THINK WE CAN QUICKLY HAVE AN ASSESSMENT DONE. I'M GOING TO HAVE A DOCTOR COME AND TALK TO YOU, MR. FRISBY.

THE DEFENDANT: I'VE HAD TWO ASSESSMENTS ALREADY. I PASSED BOTH OF THOSE. JUST BECAUSE THE PRISON GUARDS WANT TO, YOU KNOW, HAVE ISSUES WITH BRINGING ME CLOTHES OR GIVING ME TOILET PAPER AND THEY KEEP ME UNDER HIGH OBSERVATION AND ASK ME THE SAME QUESTION OVER AND OVER THAT I WILL ANSWER CORRECTLY, THAT I DO NOT HAVE ANY MENTAL ISSUES. I DON'T SEE THE REASON WHY THOSE REPORTS -- THOSE REPORTS SHOULD SUBSTANTIATE THE FACT THAT I'VE BEEN UNDER OBSERVATION AND IT HASN'T -- HASN'T BEEN SUBSTANTIATED.

THE COURT: ESPECIALLY IN A CASE WHERE A DEFENDANT IS SEEKING TO ACT AS HIS OWN ATTORNEY, I FEEL THAT I WOULDN'T BE DOING MY JOB IF I WASN'T CERTAIN THAT YOU HAD THE CAPACITY TO COMPETENTLY REPRESENT YOURSELF. I MEAN, ESPECIALLY IN YOUR CASE WHERE IT APPEARS THAT YOU'VE TAKEN, I SHOULDN'T SAY LITTLE INTEREST, BUT WHERE YOU HAVE NOT BEEN, AT LEAST, APPEARING TO WISH TO ZEALOUSLY DEFEND YOURSELF IN THIS LITIGATION. I JUST WANT TO MAKE SURE THAT YOU ARE THE BEST, THAT YOU'RE UP TO THE JOB OF REPRESENTING YOURSELF IN THIS SERIOUS CRIMINAL CASE. YOU ARE FACING LIFE IN PRISON, SIR.

THE DEFENDANT: MA'AM, YOU CAN CHARGE ME WITH WHATEVER YOU'D LIKE. IT DOESN'T MAKE ME GUILTY JUST BECAUSE I'M FACING IT.

THE COURT: I TOTALLY UNDERSTAND THAT, BUT I NEED TO MAKE SURE THAT IF YOU ARE GOING TO REPRESENT YOURSELF, THAT YOU ARE COMPETENT TO DO SO. AND EVEN IF YOU HAVE COUNSEL, THAT YOU ARE COMPETENT TO STAND TRIAL.

SO, THEREFORE, CRIMINAL PROCEEDINGS ARE SUSPENDED.

THE DEFENDANT: AND I ALSO FEEL LIKE I'M BEING BULLIED INTO GIVING TESTIMONY OVER AND OVER CONCERNING THE CASE, 'CAUSE I'VE ALREADY GIVEN TESTIMONY TO THREE PSYCHOLOGISTS -- ACTUALLY, TWO PSYCHIATRISTS AND TWO LAWYERS, TWO ATTORNEYS. THEY'RE NOW NOT REPRESENTING ME.

THE COURT: OKAY.

THE DEFENDANT: OKAY. AND THE THING IS, IS THIS, MY COMPETENCY, MY MENTAL COMPETENCY, DOESN'T HAVE ANYTHING TO DO WITH THIS TRIAL.

THE COURT: OKAY. WELL --

THE DEFENDANT: AND I'VE ALREADY PROVEN TO THEM THAT I KNOW WHERE I AM OR THAT I'M CAPABLE OF REPRESENTING MYSELF, SPEAKING FOR MYSELF AND I'VE HAD NOW SIX ATTORNEYS THAT HAVE ALL EXPRESSED AND HAVE BEEN VERY ADAMANT AT LETTING ME KNOW THAT THEY HAVE NO STAKE, QUOTE, "NO STAKE" IN THIS TRIAL. THAT MEANS THAT IF THEY SLUFF IF OFF AND THEY DON'T ASK THE RIGHT QUESTIONS OR THEY THINK THAT I'M GUILTY, THEN THEY CAN JUST GO AHEAD AND MAKE SURE THAT I DON'T WIN THIS TRIAL AND THEY DON'T HAVE ANY STAKE IN IT, WHERE I CAN SPEAK FOR MYSELF. I CAN ASK A JUROR A QUESTION JUST AS GOOD AS SOMEBODY WHO WENT TO SCHOOL FOR IT. AND -- AND I'VE ALREADY REQUESTED THAT AND I DO BELIEVE THAT I SHOULD HAVE THAT PERMISSION GRANTED.

THE COURT: WE'RE GOING TO JUST TAKE A RECESS IN THE CRIMINAL PROCEEDINGS SO I CAN ASSURE MYSELF THAT

THAT WHAT YOU SAY IS TRUE. SO I'M SURE THAT YOU WON'T MIND HAVING A DOCTOR THAT I APPOINT TALK TO YOU. AND WHEN YOU SAY THEY'RE PRESSURING YOU TO GIVE TESTIMONY, IT'S NOT TESTIMONY. IT'S CONFIDENTIAL. ANYTHING YOU SAY TO THESE DOCTORS OR TO YOUR ATTORNEY IS PRIVILEGED, SO IT CAN'T BE USED AGAINST YOU IN A CASE AT TRIAL.

THE COURT APPOINTS DR. JACK ROTHBERG. WE'LL CONTINUE THIS MATTER FOR AN EVALUATION BY DR. ROTHBERG AND TO RETURN TO COURT ON MARCH 15TH. THANK YOU.

MS. AVEDISSIAN: YOUR HONOR, IS THE COURT ALSO AT THIS TIME REVOKING PRO PER STATUS?

THE COURT: WELL, NO. NO, I'M NOT. I'M FINDING OUT WHETHER I NEED TO.

MS. AVEDISSIAN: OKAY. THANK YOU.

(THE MATTER WAS CONTINUED TO TUESDAY, MARCH 15, 2016, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

# EXHIBIT COVER PAGE

3

EXHIBIT

**DESCRIPTION OF THIS EXHIBIT:** Psychiatric report by Jack Rothberg March 1, 2016. Defendant Mark Frisby was found fit for trial. In compliance with Faretta v. California, 422 U.S. 806 (1975)

**NUMBER OF PAGES TO THIS EXHIBIT:** 4 **PAGES.**

numbered: 000036, 000037, 000038, 000039

JURISDICTION: (Check only one)

- [ ] CDCR Administrative Appeal
- [ ] California Victim Compensation And Government Claims Board
- [ ] Municipal Court
- [X] Superior Court
- [ ] Appellate Court
- [ ] State Supreme
- [ ] United States District Court
- [ ] United States Circuit Court
- [ ] United States Supreme Court

Approved for use with Judicial Council forms
Jan 1997

JACK ROTHBERG, M.D., PH.D.
A MEDICAL CORPORATION
PSYCHIATRY & PSYCHOANALYSIS
FORENSIC PSYCHIATRY

6200 WILSHIRE BOULEVARD, SUITE 1612
LOS ANGELES, CALIFORNIA 90048

TELEPHONE (323) 857-8000
FAX (323) 857-8008

March 1, 2016

The Honorable Leslie Swain
Judge of the Superior Court
Department 131
19-513 Criminal Courts Building
210 West Temple Street
Los Angeles, CA 90012

## PSYCHIATRIC REPORT

RE : Mark Frisby
Case # : BA 438972
Booking # : 4414198

Dear Judge Swain:

At your request, and pursuant to Section 1368 of the Penal Code, I saw Mr. Frisby in psychiatric evaluation. The purpose of this examination was to assess his competency to represent himself pro per. I examined him at the Twin Towers Jail February 24, 2016. I advised him of the nonconfidential nature of this examination. In preparation for this examination I reviewed some correspondence between the court and the legal unit of the Sheriff's Department. My interview was not electronically recorded. Below are my findings and conclusions.

## CIRCUMSTANCES OF ARREST:

Mr. Frisby indicates he was arrested on August 13, 2015 and charged with attempted murder and assault with a deadly weapon. He is aware that the charge is serious and he is facing life in prison if convicted. He understood the purpose of the trial is to determine guilt or innocence. He knew that the jury would make the determination and that the judge "mitigates." When I asked him what that meant he said that meant that the law was being followed. He was aware that the district attorney prosecutes the case him and his attorney's job was to defend him. He explains he wants to be pro per because four different attorneys have walked out on him. He does not trust them. They do not have a "stake" in his case. When I explored that with him and pointed out that no attorney has

a stake in their client's case unless it is on a contingency basis and that does not mean that they are disinterested in their case. He confused the two issues and insisted that was the case. He believes that counsel will likely plead him even though he is not guilty.

I tried to explore Mr. Frisby's approach to the proceedings and his background, given the fact that he did not even finish high school and had to go back and get a GED. I explored whether he actually could cross examine witnesses and whether he was aware of the rules of evidence or even what that meant. He began talking about how he would show that the witnesses were lying. However, his approach to this was entirely irrational and would certainly not be an admissible approach in the courtroom. I explored whether he actually had witnesses to present. He said he would be the only witness, but he would rely upon the prosecution's case to show that it was faulty because the witnesses would all contradict each other.

Mr. Frisby became increasingly agitated as I explored his capacity to actually proceed with the trial and then basically said that he was done talking with me. Fortunately I had explored this area at the end of the interview so I had already done a complete examination by that point.

## CRIMINAL HISTORY:

Mr. Frisby indicates he has been arrested three times. One was a warrant on a bus ticket which he failed to pay, one was disturbing the peace and another time there was a probation violation. He spent twenty-one days in a Las Vegas jail. He has never been to state prison.

## PSYCHIATRIC HISTORY:

Mr. Frisby denies any prior emotional difficulties. He couldnot explain why he is in the acute mental health unit. He has had no prior mental health contact. He emphatically denies auditory hallucination, paranoid delusions, or Schneiderian criteria for schizophrenia. He admits he may have been depressed since coming into custody, but insists this is simply situational. He denies any episodes of mania. He smokes marijuana occasionally, but not regularly. He did drink alcohol, up to a pint a day, up until two or three years ago, but cut that back. He denies any prior contact with psychiatrists, psychologists or other mental health professionals prior to this arrest.

## BACKGROUND INFORMATION:

Mr. Frisby was born in Long Beach, California on October 19, 1978. Father died about fourteen years ago, he does not know what he died of. He had worked various odd jobs. Mother died about fifteen years ago at the age of 45. She was simply sick and died, he could not explain what the cause of death was at such a young age. She had done some odd jobs. He claims he was the only child of that union. He was raised by his parents in an intact family. He claims he was an A/B student or at least straight A's until high school then his grades dropped some. He dropped out after the tenth grade. He later got a GED, but then took some type of high school equivalency test.

Mr. Frisby worked as a cook for nine months, did telemarketing, and was in the Navy for eight years doing satellite communications. He was honorably discharged at the rank of E4. He had his own restaurant for a year, but that business failed when they were doing construction on his street and basically eliminated most of the business. He has done some other odd jobs for various companies. He repaired machines, worked on lasers, took some acting classes and was a student under the GI bill during his last year earning $2,300 a month and going to school. He was living in a studio apartment in Los Angeles at the time of his arrest. He has not been married, has no children, and has no girlfriend.

## MENTAL STATUS EXAMINATION:

Mr. Frisby is a 37 year old man who appears to be his stated age. He is casually dressed in jail garb, and adequately groomed. He is neither pleasant nor fully cooperative with the interview. He tends to be highly rambling and disorganized. He is alert and well oriented. He is anxious, his mood is euthymic, but labile and inappropriate. His associations are loose, jumping from topic to topic and is highly circumstantial and tangential. He demonstrates a significant thought disorder. He denies auditory hallucinations and paranoid delusions, but certainly is highly suspicious. He is not suicidal. His fund of knowledge, ability to abstract and general intellectual functioning are adequate. He demonstrates very little capacity for insight.

## SUMMARY AND CONCLUSIONS:

Mr. Frisby is a 37 year old man who was arrested in August 2015 and charged with attempted murder and assault with a deadly weapon. He denies any mental illness, but this is contrary to Sheriff's Department experiences. In fact, he was on the suicide module in a suicide gown. He was noted to be mentally unstable, agitated, could not interact well with others.

I believe Mr. Frisby has an underlying psychotic process, most likely bipolar though the evidence is sparse at this point given his complete denial of any emotional difficulties. However, it is quite evident from his interactions with me that he has a significant thought disorder. He has difficulty keeping his thoughts in an organized sequence, is at times irrational and at other times can be quite agitated. Although I do believe he is at least marginally competent to stand trial represented by counsel, he would not be able to represent himself pursuant to Edwards v. Indiana. He lacks the ability to organize material, examine and cross examine witnesses, plan a strategy, follow courtroom procedure, rules of evidence, or maintain decorum in the courtroom. This is a particularly sensitive area given the seriousness of the charges. In fact, he is so agitated at times that the Sheriff's Department would have difficulty accommodating his need even to get to the law library in a consistent manner to be able to prepare his own defense.

I do not believe Mr. Frisby is able to represent himself.

I hope this report has been of value to you. If I can answer any further questions or provide additional information please do not hesitate to contact me.

Sincerely,

Jack Rothberg

Jack Rothberg, M.D., Ph.D.

JR/mw/rk

# EXHIBIT COVER PAGE

Petitioner was found Not Guilty of Attempted Murder based on the Jury's decision that the injuries were not severe enough.

4

EXHIBIT

Petitioner testified that he had not assaulted Vincent Ortiz. Pat Thomason testified in closing arguments that petitioner had assaulted Vincent Ortiz.

**DESCRIPTION OF THIS EXHIBIT:** Public defender Pat Thomas's closing argument. Pat Thomason States. "Wild and Crazy act without someone with any particular intent whatsoever." An argument that would destroy any reasonable chance for a verdict of Not Guilty.

**NUMBER OF PAGES TO THIS EXHIBIT:** 2 **PAGES.**
Numbered: 169 and 170.

JURISDICTION: (Check only one)

- ☐ CDCR Administrative Appeal
- ☐ California Victim Compensation And Government Claims Board
- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme
- ☐ United States District Court
- ☐ United States Circuit Court
- ☐ United States Supreme Court

A HAMMER, WHO CARES WHAT I THINK. THAT'S THE EVIDENCE. HITTING SOMEONE ON THE HEAD WITH A HAMMER CAN INDICATE INTENT TO KILL, BUT IT'S CERTAINLY NOT JUST INTENT, BUT SOLELY NO INTENT. WILD AND CRAZY ACT WITHOUT SOMEONE WITH ANY PARTICULAR INTENT WHATSOEVER.

SO HOW DO YOU DETERMINE IT? WE TALKED. THE JUDGE HAS TOLD YOU ABOUT CIRCUMSTANTIAL EVIDENCE AND CIRCUMSTANTIAL EVIDENCE IS FINE. I LIKE CIRCUMSTANTIAL EVIDENCE, BUT IF YOU DO HAVE CIRCUMSTANTIAL EVIDENCE, HER HONOR TOLD YOU THAT REGARDING MENTAL STATE, BEFORE YOU MAY RELY ON CIRCUMSTANTIAL EVIDENCE TO CONCLUDE THAT THE DEFENDANT HAD THE REQUIRED MENTAL -- REQUIRED INTENT AND/OR MENTAL STATE, YOU MUST BE CONVINCED THAT THE ONLY REASONABLE CONCLUSIONS SUPPORTED BY THE CIRCUMSTANTIAL EVIDENCE IS THAT THE DEFENDANT HAD THE REQUIRED INTENT AND/OR MENTAL STATE.

IF YOU CAN DRAW TWO OR MORE REASONABLE CONCLUSIONS FROM THE CIRCUMSTANTIAL EVIDENCE AND ONE OF THOSE REASONABLE CONCLUSIONS SUPPORT A FINDING THAT THE DEFENDANT DID HAVE THE REQUIRED INTENT OR MENTAL STATE AND ANOTHER REASONABLE CONCLUSION THAT SUPPORTS THE FINDING THAT THE DEFENDANT DID NOT, YOU MUST CONCLUDE THAT THE REQUIRED INTENT AND MENTAL STATE WAS NOT PROVED BY THE CIRCUMSTANTIAL EVIDENCE. HOWEVER, YOU MUST ACCEPT ONLY REASONABLE CONCLUSIONS AND REJECT ANY THAT ARE UNREASONABLE.

AGAIN, HITTING SOMEONE ON THE HEAD WITH A

HAMMER CAN BE AN INTENT TO KILL. AGAIN, A DRUNKEN SMASHING OR FOR WHATEVER, NO REASON. FOR NO REASON DOESN'T NECESSARILY MEAN THAT THERE WAS INTENT TO KILL AND THAT'S ONE REASONABLE INTERPRETATION OF THE EVIDENCE, PARTICULARLY IN LIGHT OF MR. SAMANO'S TESTIMONY THAT HE SAW TWO HITS AND THAT WHEN HE CALLS OUT "STOP," THE DEFENDANT STOPS. HE DOESN'T CONTINUE TO MAKE SURE THAT THE JOB IS DONE. I THINK THAT'S CERTAINLY A REASONABLE INTERPRETATION OF THE EVIDENCE OF A LACK OF INTENT TO KILL.

IT'S ALSO AN INTENT INCOMPATIBLE WHEN YOU HEAR MR. FRISBY WENT UP TO MR. ORTIZ WELL, "ARE YOU OKAY?" AND HE TALKED TO MR. SAMANO. HE'S OKAY. HE WENT UP TO HIM MULTIPLE TIMES "ARE YOU OKAY? ARE YOU OKAY?" NOT PICK THE HAMMER BACK UP AND START WHACKING HIM. "ARE YOU OKAY?" JUST A REASONABLE INTERPRETATION OF A LACK OF INTENT TO KILL, YOU FIND NOT GUILTY OF COUNT 1, ATTEMPTED MURDER.

NOW, IT DOESN'T DO ANYTHING ABOUT COUNT 2. YOU JUST GO STRAIGHT TO COUNT 2 IF THAT'S THE CASE. AGAIN, PERHAPS MAYBE YOU DISAGREE. IF THE ONLY INTERPRETATION IS INTENT TO KILL, YOU STILL HAVE TO DETERMINE THE ALCOHOL TO DETERMINE THAT ALLEGATION OF WHETHER IT WAS WILLFUL, DELIBERATE AND PREMEDITATED.

I WANT TO FOCUS ON DELIBERATE. LET'S AGAIN REVIEW THE JUDGE'S INSTRUCTIONS ON THAT POINT. THE DEFENDANT DELIBERATED IF HE CAREFULLY WEIGHED THE CONSIDERATION FOR AND AGAINST HIS CHOICE AND KNOWING THE

# EXHIBIT COVER PAGE

5

EXHIBIT

Petitioner claims that he was harassed and misdiagnosed in an effort by Los Angeles County to deny him a right to trial pursuant to but not exclusivley pursuant to Penal Codes 1381 and 1389

**DESCRIPTION OF THIS EXHIBIT:** Court appoints alternate public defender Kris Finley. Trial is delayed to the prosecutions advantage for 1 year and 5 months.

Petitioner claims that a two-year forced Incarceration where he was subject to constant interrogation prior to trial was a violation of his right to speedy trial.

**NUMBER OF PAGES TO THIS EXHIBIT:** 2 **PAGES.**

Petitioner further claims that the court imposed two-year incarceration pretrial was a civil rights violation and that it had an adverse effect on the outcome of his trial.

JURISDICTION: (Check only one)

pgs 00040, 00041

- [ ] CDCR Administrative Appeal
- [ ] California Victim Compensation And Government Claims Board
- [ ] Municipal Court
- [x] Superior Court
- [ ] Appellate Court
- [ ] State Supreme
- [ ] United States District Court
- [ ] United States Circuit Court
- [ ] United States Supreme Court

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE PRINTED: 03/15/16

---

ASE NO. BA438972

HE PEOPLE OF THE STATE OF CALIFORNIA
VS.
EFENDANT 01: MARK RAYMOND FRISBY

---

NFORMATION FILED ON 01/06/16.

OUNT 01: 664-187(A) PC FEL
OUNT 02: 245(A)(1) PC FEL

N 03/15/16 AT 830 AM IN CENTRAL DISTRICT DEPT 131

ASE CALLED FOR 1368 PC HEARING

ARTIES: LESLIE A. SWAIN (JUDGE) DAVID YAGUCHI (CLERK)
MARY DAVIS (REP) VERGINIA AVEDISSIAN (DA)

EFENDANT IS PRESENT IN COURT, AND REPRESENTED BY KRIS FINLEY ALTERNATE PUBLIC EFENDER

AIL SET AT $1,020,000

BKG #4414198 / DDA: VERGINIA AVEDISSIAN #243183

TAND BY ATTORNEY CSABA PALFI IS PRESENT IN COURT,

TILIZING THE SERVICES OF C.A.R.T. REPORTER,
HEILA BROCK, CSR #10025.

HE COURT IS IN RECEIPT OF A REPORT SUBMITTED BY
OCTOR JACK ROTHBERG, DATED MARCH 1, 2016.

HE DEFENDANT IS NOT PRESENTLY COMPETENT TO REPRESENT IMSELF.

HE DEFENDANT IS PRESENTLY COMPETENT TO STAND TRIAL.

HE COURT REVOKES THE DEFENDANT'S PRO PER STATUS,
VER THE DEFENDANT'S OBJECTION.

HE COURT RE-APPOINTS THE ALTERNATE PUBLIC DEFENDER.

ASE NO. BA438972
EF NO. 01

DATE PRINTED 03/15/16

RIMINAL PROCEEDINGS ARE REINSTATED.

ATTER IS CONTINUED TO APRIL 5, 2016 IN DEPARTMENT 131
T 8:30 A.M. FOR PRETRIAL AS DAY 21 OF 60.

COPY OF THIS MINUTE ORDER IS FAXED TO THE SHERIFF'S
RO PER UNIT ON THIS DATE.

OURT ORDERS AND FINDINGS:

CRIMINAL PROCEEDINGS ARE RESUMED.

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

EXT SCHEDULED EVENT:
4/05/16 830 AM PRETRIAL CONFERENCE DIST CENTRAL DISTRICT DEPT 131

AY 21 OF 60

USTODY STATUS: DEFENDANT REMANDED

# Exibit Cover Page

Exibit: 6

Number of pages: 2

Description: pgs - G2 and G3

Petitioner expresses his concerns with the court that he has been misdiagnosed and subjected to cruel and unusual punishment. This happens the same time the court, now routinley, denies petitioner effective council.
Neither the judge Leslie Swain or court appointed council at any time make any attempt to adress the petitioners concerns over cruel and unusual punishment or misdiagnosis.
Court makes no inquiry into miranda violations.

" Miranda was hanged in an attempt by the prosecution to sollicit a confession" Petitioner in this case refers to this miranda violation as a violation of his Fifth Amendment rights.

MS. OURFALIAN: YOUR HONOR, AT THIS POINT IN TIME I DO HAVE SOME CONCERNS BASED ON WHAT'S IN THE REPORT, GIVEN THAT THEY DO DIAGNOSIS HIM WITH A MENTAL ILLNESS; HOWEVER, HE WAS MEDICATED THE ENTIRE TIME ALSO THERE SAYING THERE WAS A RISK THAT HE COULD DECOMPENSATE, BUT AT THIS POINT I'LL SUBMIT TO IT, BUT ONCE HE GETS REASSIGNED TO A NEW ATTORNEY, I'LL LET THEM DETERMINE WHETHER THEY'LL HAVE HIM RE-EVALUATED BY ANOTHER DOCTOR.

MR. FRISBY HAS EXPRESSED TO ME HE DOES NOT WANT TO SEE ANOTHER DOCTOR AND THAT HE WANTS TO PROCEED WITH HIS CASE. THAT IS HIS WISHES. AND SO, AT THIS POINT I'LL BE SUBMITTING TO THE REPORT AND EXPRESSING MY CONCERNS.

MS. SUMABAT-GRAFF: PEOPLE SUBMIT, AS WELL.

THE COURT: ALL RIGHT.

THE DEFENDANT: I WOULD LIKE TO, AT THIS TIME, YOUR HONOR, EXPRESS MY DISSATISFACTION WITH BEING DIAGNOSED WITH SCHIZOPHRENIA. I DON'T HAVE THAT. I DON'T HAVE ANY SYMPTOMS OF IT. I'VE BEEN LIED TO BY THE MEDICAL STAFF. I FEEL LIKE THEY USE DIAGNOSES LIKE SCHIZOPHRENIA TO -- BASICALLY, FOR PEOPLE WHEREIN A SITUATION WHERE THEY HAVE TO COMPLY WITH THEIR DEMANDS, WHICH INCLUDE VIOLATIONS OF THEIR FIFTH AMENDMENT RIGHTS. IF THEY DON'T COMPLY WITH THE VIOLATIONS OF THEIR RIGHTS, THEN THEY'LL USE, WHAT I WOULD EXPRESS AS, CRUEL AND UNUSUAL PUNISHMENT TO FORCE PEOPLE WHO ARE BEING ACCUSED OF CRIMES OF TAKING MEDICATION, GOING THROUGH EXTENSIVE UNNECESSARY PSYCHIATRIC TREATMENT.

THE COURT: WELL, YOUR OBJECTIONS AND YOUR POSITION ON THIS ARE NOTED FOR THE RECORD.

THE DEFENDANT: I'D ALSO LIKE TO POINT OUT THE FACT THAT MY FIFTH AMENDMENT RIGHTS WERE CLEARLY VIOLATED IN SAN BERNARDINO AND THAT WILL SHOW ON THE REPORT WHEN I HAD REQUESTED FOR AN ATTORNEY TO BE PRESENT SINCE I HAVEN'T SEEN AN ATTORNEY. IT WAS ABOUT EIGHT MONTHS ABOUT THAT THEY HAD SAID I WOULD NOT BE FIT FOR TRIAL. AND THEN WHEN I SAID, "OKAY. WELL, I'M WILLING TO SPEAK WITH YOU ABOUT THE DETAILS OF THE CASE." THAT I JUST DON'T FEEL LIKE I SHOULD HAVE TO. I FEEL LIKE IT'S A VIOLATION OF MY FIFTH AMEND RIGHTS.

THE COURT: IT'S PRIVILEGED. IT'S NOT LIKE THE PEOPLE ARE GOING TO USE IT AGAINST YOU.

THE DEFENDANT: THEY COULD USE IT AGAINST ME, THAT'S CORRECT. AND ALSO, AND SINCE I AGREED TO GO AHEAD WITH THAT, THEY FOUND ME FIT FOR TRIAL AND THAT WAS EXACTLY WHAT IT WAS ABOUT AND THAT'S WHAT THE FORCED MEDICATION HAS BEEN ABOUT.

AND, YOU KNOW, THAT'S A BIG DEAL WHEN YOU TELL A PERSON THAT YOU'RE GOING TO FORCE THEM TO TAKE MEDICATION IF THEY DON'T COMPLY WITH YOUR DEMANDS. I'M STATING UNREASONABLE GROUNDS.

THE COURT: CRIMINAL PROCEEDINGS -- THE COURT FINDS THE DEFENDANT HAS BEEN RESTORED TO COMPETENCY. CRIMINAL PROCEEDINGS ARE REINSTATED.

DOES THE DEFENDANT RE-ENTER HIS NOT GUILTY PLEA, MS. OURFALIAN?

Exibit 7

number of pages: 1. - pg# 000127

Description: Court misused its descression in denying petitioner a fair trial. Judge Leslie Swain states "At the time of the preliminary hearing, there was no evidence to suggest that the defendant was incampetent to represent himself

understanding of what the plea connotes and of its consequence')." (*Godinez, supra*, 509 U.S. at p. 401, fn. 12 [113 S.Ct. at pp. 2687-2688].)[5] (5b) *Godinez* "explicitly forbids any attempt to measure a defendant's competency to waive the right to counsel by evaluating his ability to represent himself." (*U.S. v. Arlt* (9th Cir. 1994) 41 F.3d 516, 518.) When we examine, in light of the clarification of those standards offered in *Godinez*, the trial court's reliance upon the standard that defendant must possess some minimal ability to represent himself in order to be granted that right, it is apparent that the trial court erred in this respect as well." (*Id* at 733.)

Here, the defendant expressly informed the Court before the commencement of his preliminary hearing that he wished to represent himself and was ready to proceed with his hearing on December 23, 2015. The defendant took the time to review and initial his *Faretta* waivers and the Court found those waivers to be knowingly and intelligently made. Therefore, the defendant was competent to represent himself and his rights were not violated when he was granted pro per status. The defense has asked the court to presume that the defendant was incompetent to represent himself at the preliminary hearing based on a report by Dr. Rothberg dated on March 1, 2015. The Court should not make this presumption as "mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." (*Indiana v. Edwards* (2008) 128 S.Ct. 2379, 2386.) At the time of the preliminary hearing, there was no evidence to suggest that the defendant was incompetent to represent himself. In addition, the defendant did not suffer any prejudice since the People presented testimony at the preliminary hearing pursuant to Proposition 115.

**III.**

**CONCLUSION**

Based on the foregoing, the Court should deny the defendant's motion to set aside the information pursuant to Penal Code Section 995.

Dated: June 6, 2016

JACKIE LACEY
District Attorney

By: ______________________
VERGINIA AVEDISSIAN
Deputy District Attorney

Exhibit 8

pages: 3 00053, 00054, 00055

Description: Dr. Jack Rothberg M.D. Ph.D blames Mark Frisby for the conditions of his confinement including but not limited to the fact that Los Angeles County employees had refused to give him clothing. Jack Rothberg then recommends that Mark Frisby be placed on medication.

Jack Rothberg expresskey describes his dissatisfaction with Mark Frisby maintaining his innocence stating: "Mr. Frisby was not a cooperative historian."

pg 1. under: Circumstances of the Arrest

Line #1, Mr. Frisby was not a cooperative historian.

This statement supports the fact that the Department of Justice was inflicting prolonged cruel and unusual punishment upon Mark Frisby in an attempt to force a confession. This interview was conducted Aug 18 2016, one whole year and five days after Mark Frisbys arrest. What followed was continued extended cruel and unusual punishment, allong with the denial of the right to an attorney and a right to a speedy trial for nearly annother year. previous Miranda violations cited instances that lasted only days, in cases from the 1940's labeled pg. 1A1 simmilar cases.

JACK ROTHBERG, M.D., PH.D.
A MEDICAL CORPORATION
PSYCHIATRY & PSYCHOANALYSIS
FORENSIC PSYCHIATRY

6200 WILSHIRE BOULEVARD, SUITE 1612
LOS ANGELES, CALIFORNIA 90048

TELEPHONE (323) 857-8000
FAX (323) 857-8008

August 18, 2016

Vicky Ourfalian
Deputy Alternate Public Defender
320 W Temple St
Los Angeles CA 90012

Mark Frisby
Case # BA438972
Booking # 4414198

## PSYCHIATRIC REPORT

Dear Ms. Ourfalian:

At your request and pursuant to Section 730 of the Evidence Code and Section 987.9 of the Penal Code, I saw Mr. Frisby in psychiatric re-evaluation. The purpose of this examination is to assess his competency to stand trial as well as his sanity at the time of the commission of the alleged offense. I examined him at the Twin Towers Jail, as brief as it was, on August 7, 2016. I was not able to admonish him regarding the confidential nature of this examination for reasons that will be obvious. In preparation for this examination I reviewed the felony complaint, the arrest report, the associated photographs, and witness statements. I also discussed the current circumstances with you. My interview was not electronically recorded. Below are my findings and conclusions.

## CIRCUMSTANCES OF THE ARREST

Mr. Frisby was not a cooperative historian. He would not come out of his room. He said he did not have clothes. He is in suicide gown because of some of his behavior. He was lying in bed and though he spoke to me briefly he said he simply did not want to come out to talk to me. As you are well aware, I had previously examined him and felt that he was not competent to represent himself pro per. After discussing the case with you and his

current behavior, it is highly likely that he is not competent to stand trial even if represented. His approach to his circumstances are rather bizarre and, no doubt, colored by psychotic thinking. Though he denies any mental problems the records, including the Sheriff's Department records, indicate significant mental illness and also a general lack of cooperation with any type of treatment program. He appears to be internally preoccupied and is delusional. This would interfere with his ability to assist counsel in preparation of a suitable defense. He certainly has an approach to his current predicament which is potentially disastrous, and I believe it is not based on poor decision-making, but significant mental illness. As a result, I believe he is not competent to stand trial. Aggressive treatment with anti–psychotic medication is clearly necessary on an involuntary basis. Given his attitude he clearly would need involuntary administration of medication should he be non-complaint. The state hospital is the optimal venue.

Once he has been restored to competence I believe he could be considered for an NGI plea, but at that point he would most likely be able to discuss the case in a rational manner which he is clearly unable to do right now.

It is medically appropriate that Mr. Frisby's psychotic condition be treated with medication. This anti-psychotic medication is likely to be effective. He lacks the capacity to make decisions about such medication, and he will have to be medicated involuntarily in all likelihood. If untreated with medication, he will suffer serious harm to his physical and mental health. He is suffering from psychosis and experiences numerous delusional ideas which impair his thinking, his ability to interact with others and to function in an effective manner. He is highly paranoid and is very likely to deteriorate further in the absence of appropriate aggressive treatment with such medication.

In his current psychotic state, Mr. Frisby is likely to present some risk of dangerousness. This would greatly diminish once his psychosis is treated. His behavior is unpredictable. He is likely to misinterpret the motives and actions of others which may result in serious harm to others or to himself. He is a danger to himself only inasmuch as his behavior is likely to be misinterpreted by others who in turn would react against him.

Treatment with antipsychotic medication is very likely to render Mr. Frisby competent to stand trial. However, there are potential side effects. Such medications are listed in the NIMH publication "Medications" and in the current edition of the Physician's Desk Reference. Such medication is not likely to have side effects that would interfere with his ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner. There are a variety of antipsychotic medications available today, and it is quite feasible that one could be found which would

have relatively minimal side effects and certainly not side effects that would interfere with his competence. Less intrusive treatments are unlikely to have substantially the same results as medication.

I hope this report has been of value to you. If I can answer any further questions or provide additional information, please do not hesitate to contact me:

Sincerely,

Jack Rothberg (RK)

Jack Rothberg, M.D., Ph. D.

JR/rk

Exibit 9

pages - 1 page# 00064

Description: JBCT program now finds petitioner "not yet able to understand the nature of the criminal proceedings against him"

No recorded interview other than petitioners expressed testimony in court that he was being misdiagnosed is available to support this claim

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA<br><br>VS.<br><br>MARK FRISBY, Defendant | DISTRICT: CENTRAL<br>DEPARTMENT: 131<br><br>REPORT OF PROGRESS TOWARD RECOVERY OF MENTAL COMPETENCE, PC §1370(B)(1)<br><br>**NOTICE OF TRANSFER FROM JBCT PROGRAM TO STATE HOSPITAL** |

TO: The Above-Entitled Court
The Sheriff
The District Attorney
The Defense Attorney

The Director of the Liberty Healthcare Jail Based Competency Treatment (JBCT) Program reports as follows concerning the above-named defendant:

Case No(s): BA438972 Committing Judge: The Honorable Leslie A. Swain

Date of Commitment: 10/17/2016 Date Admitted to JBCT Program: 11/04/2016

This defendant has undergone evaluation and treatment at the JBCT Program since the date of admission. It is the consensus of the clinical staff and Director of the JBCT Program that the above-named defendant is not yet able to understand the nature of the criminal proceedings against him and lacks the ability to assist an attorney in the conduct of a defense.

In accordance with Section 1370(b)(1) of the Penal Code, I hereby report that said **defendant has not achieved trial competence.** It is also the opinion of the clinical staff that there is a substantial likelihood the defendant will achieve trial competence in the foreseeable future. As such, the defendant requires further treatment until he has regained mental competence or until it is determined that there is no substantial likelihood that the defendant will regain competence in the foreseeable future.

However, it is the consensus of the clinical staff and Director of the JBCT Program that **the above-named defendant is not suitable for treatment in the JBCT Program at West Valley Detention Center (WVDC),** and should be transferred to a more suitable treatment facility. Specifically, the clinical staff has determined that a state hospital is more appropriate for the above-named defendant's clinical needs, as the defendant is likely to require longer term treatment to regain mental competence than is provided by the JBCT Program, which is designed to be a rapid response treatment model. The defendant has not responded adequately to competency treatment.

As such, **it is recommended that the above-named defendant be transferred to a state hospital for further treatment** until the defendant has regained mental competence or until it is determined that there is no substantial likelihood that the defendant will regain competence in the foreseeable future. The JBCT Program will notify the Sheriff to transport the defendant to the state hospital. The next court hearing is the 90-day progress hearing, and should remain as previously calendared.

Kevin Rice, LCSW or his Designee
Program Director
Liberty Healthcare Restoration of Competency (ROC)/
Jail Based Competency Treatment (JBCT) Program

1-10-17
Date

**Enclosure: PC 1370 Court Report**
**cc: County Mental Health Director**
**Patton State Hospital**

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND
INSTITUTIONS CODE SECTION 5328

· Exibit 10

pages 31 A1, A2, A3, B1, B2, B3, B4, C1, C2, C3, D1, D2, E1, E2, E3, E4 F1, F2, F3, G1, G4 and 1-10

Pretrial Court transcripts where at no time did petitioner show any signs of not understanding the proceedings or charges. Petitioner claims that he was misdiagnosed and Los Angeles County made a recommendation that he be refered to Paton Mental hospital, JBTC and medication, despite the fact that he had completley understood his charges and was fully competent not only to Stand trial, but as the court had previously upheld, adequate to represent himself in pre-trial and likley the best possible representation for himself.

Petitioner claims that the process was a miranda violation and that the trial court used its position to violate his constitutional rights.

Mary Davis, Vicky Ourfalian, Diana Van Dyke Csaba Palfi, Vanessa Romanghi Vicky Ourfalion, Patric Thomason are the attorneys ineffectivley assigned to petitioner following the denial of his right to represent himself. Also the araigning attorney and DAs attorney Mr. Hazel and court appointed attorneys prior to and including the no shows that brought about the origional complaint of inadequate assistance of councill prior to petitioner excercising his right to represent himself. Besides Vicky Ourfalian, who draped Mark Frisbys case at the one-and-three quarter-year mark, Patric Thomason was the most inadequate for siding with the prosecution.

A1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE

THE PEOPLE OF THE STATE OF CALIFORNIA, )
)
PLAINTIFF, )
)
VS. ) NO. BA438972-01
)
01 FRISBY, MARK )
)
DEFENDANT. )
_____________________________________ )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FEBRUARY 25, 2016, MARCH 15, 2016,

SEPTEMBER 8, 27, 2016, OCTOBER 17, 2016,

FEBRUARY 1, 2017, APRIL 21, 2017,

JUNE 16, 19, 20, 21, 22, 2017, JULY 19, 20, 2017

APPEARANCES:

FOR THE PEOPLE: JACKIE LACEY, DISTRICT ATTORNEY
BY: JUSTIN FORD, DEPUTY
211 WEST TEMPLE STREET
SUITE 200
LOS ANGELES, CALIFORNIA 90012

FOR DEFENDANT: JANICE FUKAI, ALTERNATE PUBLIC DEFENDER
PATRICK THOMASON, DEPUTY
320 WEST TEMPLE STREET
SUITE 35
LOS ANGELES, CALIFORNIA 90012

MARY J. DAVIS, CSR NO. 7595
OFFICIAL REPORTER

A2

# MASTER INDEX

JUNE 20, 2017, VOLUME 1

## CHRONOLOGICAL INDEX OF WITNESSES


| PEOPLE'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| VICENTE ORTIZ | 45 | 61 | 71 | | |
| MIGUEL SAMANO | 76 | 83 | | | |
| VICENTE ORTIZ (REBUTTAL) | 110 | | | | |
| DEFENDANT'S: | | | | | |
| MARK FRISBY | 90 | 97 | | | |


## ALPHABETICAL INDEX OF WITNESSES


| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| MARK FRISBY | 90 | 97 | | | |
| VICENTE ORTIZ | 45 | 61 | 71 | | |
| VICENTE ORTIZ (REBUTTAL) | 110 | | | | |

A3

# MASTER INDEX

JUNE 20, 2017, VOLUME 1

## EXHIBITS


| PEOPLE'S | FOR IDENTIFICATION | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---|---|---|---|
| 1 - PHOTOGRAPH | 47 | 87 | |
| 2 - PHOTOGRAPH | 50 | 87 | |
| 3 - PHOTOGRAPH | 55 | 87 | |
| 4 - PHOTOGRAPH | 56 | 87 | |
| 5 - PHOTOGRAPH | 57 | 87 | |
| 6 - PHOTOGRAPH | 57 | 87 | |
| 7A-7C - PHOTOGRAPHS | 58 | 87 | |
| 8 - MEDICAL RECORDS | 72 | 87 | |

| DEFENDANT'S | FOR IDENTIFICATION | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---|---|---|---|
| A - STIPULATION | 123 | 123 | |

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA TUESDAY, MARCH 15, 2016
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, PRESENT IN PROPRIA PERSONA; KRIS FINDLEY, DEPUTY ALTERNATE PUBLIC DEFENDER; VERGINIA AVEDISSIAN, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972. MR. FRISBY IS PRESENT IN PRO PER. THE COURT HAS RECEIVED -- AND VERGINIA AVEDISSIAN FOR THE PEOPLE.

THE COURT HAS RECEIVED A MEDICAL REPORT FROM DR. JACK ROTHBERG WHO HAD OCCASION TO INTERVIEW MR. FRISBY AND HAS OPINED THAT THE DEFENDANT IS NOT COMPETENT TO REPRESENT HIMSELF UNDER THE STANDARDS SET FORTH IN EDWARDS VS. INDIANA.

SO THE COURT IS GOING TO REVOKE MR. FRISBY'S PRO PER STATUS AND REAPPOINT THE PUBLIC DEFENDER IN THIS CASE, MR. KRIS FINDLEY.

MR. FINDLEY: ALTERNATE.

THE COURT: ALTERNATE PUBLIC DEFENDER. I'M SORRY, MR. FINDLEY.

THE DEFENDANT: YOUR HONOR, IF I MAY SPEAK, I'VE

BEEN A HUNDRED PERCENT COMPLIANT WITH YOUR PROGRAMS. I HAVE SPOKEN WITH YOUR PSYCHS AND I HAVEN'T DONE ANYTHING ILLEGAL OR TO PROVE IN ANY WAY I'M INCOMPETENT SPEAKING WITH MYSELF, REPRESENTING MYSELF. I'VE GONE TO YOUR PROGRAM, GONE TO YOUR LAW LIBRARY, WHICH IS DISFUNCTIONAL, BUT I'VE DONE IT AND I'M READY TO FILE MY OWN MOTIONS, IF NECESSARY, AND I'M READY TO GO TO TRIAL AS SOON AS POSSIBLE WITHOUT AN ATTORNEY I DID NOT REQUEST. I REQUESTED TO REPRESENT MYSELF AND NOW YOU'RE DENYING ME THAT RIGHT.

THE COURT: I UNDERSTAND, MR. FRISBY, BUT I'M GOING TO RELY ON THE FINDINGS OF THE MEDICAL DOCTOR WHO WAS APPOINTED IN THIS MATTER.

CRIMINAL PROCEEDINGS ARE REINSTATED. THE DOCTOR DOES SAY YOU ARE COMPETENT TO STAND TRIAL, BUT JUST THAT YOU'RE NOT GOING TO BE AN EFFECTIVE ADVOCATE FOR YOURSELF IN A CASE WHERE THE STAKES ARE SO HIGH, MR. FRISBY. I HOPE YOU WILL COOPERATE WITH MR. FINDLEY.

THE DEFENDANT: IT'S ABSOLUTELY NOT TRUE THAT I'M INCAPABLE OF DEFENDING MYSELF. IT'S ABSOLUTELY NOT TRUE.

THE COURT: THEN YOU AND I --

THE DEFENDANT: SO IF I WIN THIS TRIAL, I'LL HOLD YOU ACCOUNTABLE.

THE COURT: I CAN HANDLE THAT. TODAY IS 0 OF 60 FOR TRIAL. WE WILL --

MR. FINDLEY: WE'D REQUEST APRIL 5TH OR 6TH.

THE COURT: APRIL 5TH IS FINE. APRIL 5TH WILL BE

DAY 21 OF 60. LAST DAY IS CURRENTLY MAY 16TH.

THE DEFENDANT: I'D LIKE TO ADD IF I HAD 1.25 MILLION DOLLARS I WOULD BE WALKING OUT OF COURT BECAUSE OF THE BAIL.

THE COURT: I THINK THAT'S THE BAIL. I CAN TELL YOU FOR SURE. YES, A MILLION 20 THOUSAND.

MS. AVEDISSIAN: AND YOUR HONOR, I DID GIVE COUNSEL A COPY OF THE 911 CALL, AS WELL AS THE MEDICAL RECORDS WHICH WERE ALSO ON THE CD. AND I HAD NOT BEEN CONTACTED BY DEFENSE COUNSEL IN THE PAST, SO I GAVE THAT TO MR. FINDLEY THIS MORNING.

MR. FINDLEY: SHE SAYS SHE HAS OR HAD NOT BEEN CONTACTED?

MS. AVEDISSIAN: I HAD NOT BEEN. I HAD THE DEFENSE COPIES.

THE COURT: I DON'T KNOW IF MR. FREEMAN HAS DONE ANYTHING IN THIS CASE OR NOT, BUT, MR. FINDLEY, I CAN GIVE YOU HIS PHONE NUMBER.

MR. FINDLEY: SURE.

THE COURT: IT'S (310) 637-2840. AND THE CELL NUMBER IS (323) 997-0918. AGAIN, THAT'S ROBERT FREEMAN.

HAVE YOU ASKED HIM TO DO ANYTHING FOR YOU TO INVESTIGATE THIS CASE, MR. FRISBY?

MR. FINDLEY: I'LL INQUIRE, YOUR HONOR, THANK YOU.

THE COURT: THANK YOU.

MS. AVEDISSIAN: THAT WAS APRIL 5TH, CORRECT?

THE COURT: PARDON ME?

MS. AVEDISSIAN: APRIL 5TH?

THE COURT: CORRECT.

MR. PALFI: YOUR HONOR, ARE YOU GOING TO RELIEVE ME?

THE COURT: I'M SORRY?

MR. PALFI: ARE YOU GOING TO RELIEVE ME?

THE COURT: YES. MR. PALFI IS RELIEVED.

(THE MATTER WAS CONTINUED TO TUESDAY, APRIL 5, 2016, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA THURSDAY, SEPTEMBER 8, 2016
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, NOT PRESENT;

COUNSEL, VICKY OURFALIAN, DEPUTY ALTERNATE PUBLIC DEFENDER, PRESENT; AMA KUMI-THOMAS, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972.

MS. OURFALIAN: THANK YOU, YOUR HONOR, VICKY OURFALIAN, ALTERNATE PUBLIC DEFENDER ON BEHALF OF MR. FRISBY. HE'S NOT PRESENT BEFORE THE COURT, BUT HE IS IN THE BUILDING.

MS. KUMI-THOMAS: GOOD MORNING, YOUR HONOR, AMA KUMI-THOMAS, FOR THE PEOPLE.

THE COURT: GOOD MORNING. WE ARE DAY 4 OF 10 FOR TRIAL.

MS. OURFALIAN: YES, YOUR HONOR. AT THIS TIME I'M DECLARING A DOUBT AS TO MR. FRISBY'S COMPETENCY. I HAVE A REPORT THAT I INCLUDED IN THE COURT FILE FOR THE COURT'S REVIEW.

THE COURT: ALL RIGHT. CRIMINAL PROCEEDINGS ARE

SUSPENDED. I WISH TO ORDER BOTH, THAT HE BE ADMITTED TO THE STATE HOSPITAL AND ALSO THAT HE BE EVALUATED FOR THE JAIL -- JBTC, JAIL BASED COMPETENCY TREATMENT. HE NEEDS TO BE ADMITTED TO THE STATE HOSPITAL, PATTON PROBABLY.

I'M ALSO ORDERING --

(AN OFF-THE-RECORD-DISCUSSION WAS HELD.)

THE COURT: THE COURT WILL ORDER THAT THE SAN BERNARDINO WEST VALLEY DETENTION CENTER JAIL BASED COMPETENCY TREATMENT PROGRAM, JBCT, AS THE DEPARTMENT OF STATE HOSPITAL TO DESIGNATE AND REPORT TO THE COURT WHETHER THE DEFENDANT IS APPROPRIATE FOR TREATMENT IN THE JBCT OR STATE HOSPITAL WITHIN 15 DAYS OF THIS ORDER. SO THEY'LL DO AN EVALUATION.

I IMAGINE THE PACKET THAT THEY RECEIVE WILL INCLUDE DR. ROTHBERG'S REPORT, SO I'M GOING TO RETRACT THE ORDER THAT HE BE ADMITTED TO PATTON AND INSTEAD, ORDER THIS EVALUATION AND THAT SHOULD INCLUDE WHETHER THEY THINK HE SHOULD BE TREATED IN THE JBCT OR HE NEEDS TO GO TO PATTON.

MS. OURFALIAN: OKAY.

THE COURT: AND THE COURT ORDERS A REPORT FROM THAT EVALUATION ON SEPTEMBER 27TH. AND WE'LL TRAIL THIS MATTER UNTIL THAT DAY. AGAIN, CRIMINAL PROCEEDINGS REMAIN SUSPENDED.

ARE THE PEOPLE SUBMITTING ON DR. ROTHBERG'S REPORT AS TO THE COMPETENCY?

MS. KUMI-THOMAS: YES, YOUR HONOR.

THE COURT: THE COURT FINDS THE DEFENDANT IS INCOMPETENT TO STAND TRIAL BASED UPON THE REPORT SUBMITTED OR PREPARED ON AUGUST 1ST BY DR. JEFF ROTHBERG WHO HAS NOW EVALUATED THE DEFENDANT TWICE AND HAS DETERMINED, IN HIS VIEW, THAT HE IS NOT COMPETENT TO STAND TRIAL.

(THE MATTER WAS CONTINUED TO TUESDAY, SEPTEMBER 27, 2016, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA TUESDAY, SEPTEMBER 27, 2016
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, NOT PRESENT; COUNSEL, VICKY OURFALIAN, DEPUTY ALTERNATE PUBLIC DEFENDER, PRESENT; AMA KUMI-THOMAS, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972, NUMBER 6 ON THE CALENDAR.

MS. OURFALIAN: VICKY OURFALIAN, ALTERNATE PUBLIC DEFENDER ON BEHALF OF MR. FRISBY.

MS. KUMI-THOMAS: GOOD MORNING, AMA KUMI-THOMAS FOR THE PEOPLE.

THE COURT: GOOD MORNING. HAS ANYBODY HEARD ANYTHING ABOUT MR. FRISBY?

MS. OURFALIAN: NO, YOUR HONOR. I WAS GOING TO TRY TO SEE WHO I CAN CONTACT TO FIND OUT WHAT IS HAPPENING WITH REGARD TO THE JAIL BASE PROGRAM, IF THEY ASSESSED HIM, WHAT'S HAPPENING. I CAN GO AND TRY TO MAKE CONTACT. IF WE CAN MAYBE PUT THIS OVER FOR A FEW WEEKS IN AN ATTEMPT TO DO THAT AND HAVE HIM REPORT TO THE COURT.

THE COURT: I KEEP THINKING HE'S STILL IN CUSTODY. DO YOU KNOW, DAVID?

THE CLERK: IT SHOWS HE IS IN CUSTODY.

THE COURT: IN COUNTY JAIL?

THE CLERK: YES.

THE COURT: AND --

THE CLERK: IT SHOWED THERE WAS THE JAIL BASE TREATMENT PROGRAM NEXT TO HIS NAME. I DON'T KNOW IF THAT'S WHERE HE IS. I DON'T KNOW HOW THAT WORKS, BUT THAT'S WHAT IT SAYS NEXT TO HIS NAME AND CASE NUMBER ON THIS INFORMATION.

MS. OURFALIAN: I CAN FIND OUT MORE INFORMATION.

THE COURT: OKAY.

MS. OURFALIAN: DOES THE COURT MIND GOING OUT TO OCTOBER 17TH OR DO YOU WANT A SOONER DATE?

THE COURT: THAT'S OKAY.

ANY OBJECTION FROM THE PEOPLE?

MS. KUMI-THOMAS: NO, YOUR HONOR.

THE COURT: WE'LL CONTINUE THIS UNTIL OCTOBER 17TH FOR 1368 HEARING SETTING. THANK YOU. CRIMINAL PROCEEDINGS REMAIN SUSPENDED.

(THE MATTER WAS CONTINUED TO MONDAY, OCTOBER 17, 2016, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA MONDAY, OCTOBER 17, 2016
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, NOT PRESENT; COUNSEL, VICKY OURFALIAN, DEPUTY ALTERNATE PUBLIC DEFENDER, PRESENT; SETH CARMACK, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972.

MS. OURFALIAN: VICKY OURFALIAN ON BEHALF OF MR. FRISBY. HE IS NOT PRESENT.

MR. CARMACK: SETH CARMACK ON BEHALF OF THE PEOPLE.

THE COURT: MS. OURFALIAN --

MS. OURFALIAN: YES, YOUR HONOR.

THE COURT: -- YOU'VE RECEIVED A NOTICE OF SUITABILITY FROM THE JBCT PROGRAM?

MS. OURFALIAN: YES.

THE COURT: LET ME JUST TAKE A MOMENT TO READ THAT.

THE DEFENDANT HAS PREVIOUSLY BEEN FOUND INCOMPETENT AND THIS WAS PUT OVER UNTIL TODAY FOR THE

ISSUE OF PLACEMENT. AT THIS TIME THE COURT WILL COMMIT THE DEFENDANT TO THE JBCT PROGRAM OR TO PATTON STATE HOSPITAL. THE DEFENDANT IS TO BE ADMITTED NO LATER THAN 15 DAYS FROM NOW NOVEMBER 1ST. I'LL CALENDAR THIS FOR NOVEMBER 1ST FOR A PROOF OF PLACEMENT.

MS. OURFALIAN: FOR THE COURT'S INFORMATION, THE PROGRAM COORDINATOR DID INDICATE IT WOULD TAKE ABOUT A WEEK TO PLACE HIM ONCE THEY RECEIVE A COMMITMENT ORDER, SO THAT SHOULD BE ENOUGH TIME, HOPEFULLY, FOR THE NOVEMBER 1ST COURT DATE.

THE COURT: OKAY. HE SHOULD BE ADMITTED BY NOVEMBER 1ST AND TRANSFERRED BY THE SHERIFF'S NO LATER THAN NOVEMBER 1ST AND THAT WILL BE TO THE --

MS. OURFALIAN: SAN BERNARDINO WEST VALLEY DETENTION CENTER, JBCT PROGRAM.

THE COURT: THE COURT ALSO ORDERS MAXIMUM COMMITMENT DATE IS AUGUST 13TH, 2018.

AND THE COURT ORDERS THAT THE DEFENDANT BE MEDICATED INVOLUNTARILY, IF NECESSARY, BASED UPON THE FOLLOWING FINDINGS:

BASED -- INCLUDING IN DR. ROTHBERG'S REPORT IS A RECOMMENDATION FOR MANDATORY OR INVOLUNTARY MEDICATION IN THAT HE'S SUGGESTING. AND THE COURT NOW FINDS THAT IT IS MEDICALLY APPROPRIATE TO TREAT THE DEFENDANT'S PSYCHIATRIC CONDITION WITH MEDICATION; THAT THE MEDICATION IS LIKELY TO BE EFFECTIVE; THAT WITHOUT MEDICATION IT IS PROBABLE THAT THE DEFENDANT WOULD SUFFER SERIOUS HARM TO HIS PHYSICAL OR MENTAL HEALTH AND

THAT THE DEFENDANT PRESENTLY LACKS THE CAPACITY TO MAKE DECISIONS ABOUT SUCH MEDICATION.

THE COURT THEREBY CONCLUDES THAT THE DEFENDANT MAY BE INVOLUNTARILY MEDICATED OR IF IT BECOMES NECESSARY TO DO SO IN THE OPINION OF THE TREATING PSYCHIATRIST.

FINALLY, THE COURT ORDERS THAT SHOULD THE JBCT PROGRAM DEEM THAT IT IS APPROPRIATE AND/OR NECESSARY, THEY MAY TRANSFER THE DEFENDANT WITHOUT FURTHER ORDER FROM THIS COURT TO A STATE HOSPITAL, SPECIFICALLY, INCLUDING, PATTON OR METROPOLITAN HOSPITAL.

ANYTHING FURTHER FROM COUNSEL?

MS. OURFALIAN: NOTHING FURTHER. THANK YOU, YOUR HONOR.

THE COURT: THANK YOU. DO YOU KNOW HIS CREDITS, MS. OURFALIAN?

MS. OURFALIAN: NO, YOUR HONOR. I CAN CALCULATE THEM.

THE COURT: LET'S JUST LEAVE IT WITHOUT THE CREDITS FOR NOW OR DO WE HAVE TO --

THE CLERK: I DON'T KNOW.

MS. OURFALIAN: I CAN GET IT READY FOR THE NEXT COURT DATE OR DO YOU NEED IT TODAY?

THE COURT: HE NEEDS IT IN HIS MINUTE ORDER.

///

///

///

CASE NUMBER: BA438972-01

CASE NAME: PEOPLE VS. MARK FRISBY

LOS ANGELES, CA WEDNESDAY, FEBRUARY 1, 2017

DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE

REPORTER: MARY J. DAVIS, CSR NO. 7595

TIME: A.M. SESSION

APPEARANCES:

DEFENDANT MARK FRISBY, NOT PRESENT;

COUNSEL, VICKY OURFALIAN, DEPUTY ALTERNATE PUBLIC DEFENDER, PRESENT; AMA KUMI-THOMAS, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, NUMBER 5 ON THE CALENDAR, BA438972.

MS. OURFALIAN: THANK YOU, YOUR HONOR, VICKY OURFALIAN ON BEHALF OF MR. FRISBY. HE'S NOT PRESENT.

MS. KUMI-THOMAS: AMA KUMI-THOMAS FOR THE PEOPLE. GOOD MORNING.

THE COURT: GOOD MORNING. WE RECEIVED A LETTER FROM THE JAIL COMPETENCY TREATMENT PROGRAM, JBCT. MR. FRISBY HAS SPENT SOME TIME THERE, BUT HE HAS NOT ACHIEVED TRIAL COMPETENCE AND THEY RECOMMEND THAT HE BE TRANSFERRED TO PATTON STATE HOSPITAL, WHICH IS THIS COURT'S ORDER AT THIS TIME. I THINK HE GOES BACK ON A WAIT LIST.

MS. OURFALIAN: IS HE BEING HOUSED AT THE JBCT PROGRAM?

THE COURT: HE MUST BE. UNTIL THE TRANSFER GOES THROUGH? HE'S NOT IN L.A. COUNTY? OKAY.

MS. OURFALIAN: DO WE HAVE ANY IDEA WHEN HE GETS A DEPARTMENT 95 CASE NUMBER OR DATE?

THE COURT: I DON'T KNOW IF HE GETS A DEPARTMENT 95 CASE NUMBER. THAT'S IF IT'S PRE-PRELIM. I'M TRYING TO FIND A TELEPHONE NUMBER SOMEPLACE ON THIS REPORT.

MS. KUMI-THOMAS: SHOULD WE DO 45 DAYS?

THE COURT: LET ME REREAD THE SUMMARY IN THE REPORT.

THEY HAVE A FAX NUMBER, BUT NO TELEPHONE NUMBER. I'M GOING TO CONTINUE THIS MATTER FOR STATUS. I'LL PUT IT OVER FOR 60 DAYS AT THIS POINT. NO, THAT'S NOT RIGHT.

MS. OURFALIAN: MAYBE WE CAN COME BACK MID APRIL IF IT'S NOT TOO FAR OUT.

THE COURT: APRIL 20TH.

MS. OURFALIAN: THAT'S ACCEPTABLE.

THE COURT: CRIMINAL PROCEEDINGS REMAIN SUSPENDED.

AND IN THE MEANTIME EITHER I OR THE COURT CLERK WILL GET IN TOUCH WITH JBCT TO FIND OUT IF ANYTHING FURTHER IS REQUIRED FROM THE COURT OR COUNSEL WITH RESPECT TO THE TRANSFER TO PATTON.

MS. OURFALIAN: THANK YOU, YOUR HONOR. I'LL LOOK INTO IT, AS WELL.

THE COURT: THANK YOU.

MS. KUMI-THOMAS: THANK YOU, YOUR HONOR.

THE COURT: THANK YOU.

(THE MATTER WAS CONTINUED TO THURSDAY, APRIL 20, 2017, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

CASE NUMBER: BA438972-01
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA FRIDAY, APRIL 21, 2017
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: A.M. SESSION
APPEARANCES:

DEFENDANT MARK FRISBY, PRESENT WITH COUNSEL, VICKY OURFALIAN, DEPUTY ALTERNATE PUBLIC DEFENDER; JOY SUMABAT-GRAFF, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE MARK FRISBY MATTER, BA438972.

MS. OURFALIAN: THANK YOU, YOUR HONOR, VICKY OURFALIAN, ALTERNATE PUBLIC DEFENDER ON BEHALF OF MR. FRISBY, PRESENT BEFORE THE COURT.

MS. SUMABAT-GRAFF: JOY SUMABAT-GRAFF, STANDING IN FOR JUSTIN FORD.

THE COURT: ALL RIGHT. THIS MATTER IS BACK IN COURT. MR. FRISBY HAS RETURNED. BASED UPON THE JBCT PROGRAM, STATES THAT THE DEFENDANT HAS BEEN RESTORED TO MENTAL COMPETENCE.

DO BOTH COUNSEL STIPULATE TO THE REPORT SUBMITTED ON MAY 10TH, 2017, WHICH WAS SIGNED BY SARAH MORAD (PHONETIC) AND LINDSEY SALCEDO, CLINICAL DIRECTORS AT THE JAIL BASED COMPETENCY TREATMENT PROGRAM?

MS. OURFALIAN: YES, YOUR HONOR.

THE COURT: SO TODAY IS 0 OF 60 THEN FOR TRIAL.

MS. OURFALIAN: YOUR HONOR, CAN WE ACTUALLY GET ABOUT A TWO-WEEK DATE SO MR. FRISBY CAN GET -- CAN CONSULT WITH A NEW ATTORNEY THAT GETS ASSIGNED?

THE COURT: SURE. HOW ABOUT MAY 5TH? YOUR 9/80 DAY IS ON MONDAYS, RIGHT?

MS. OURFALIAN: I'M NOT SURE WHEN THEIR 9/80 WOULD BE. IF WE CAN AVOID A MONDAY OR FRIDAY, THAT WOULD BE GREAT.

THE COURT: TUESDAY, MAY 9TH?

MS. OURFALIAN: THAT SOUNDS GREAT.

THE COURT: AND THAT WILL BE DAY 18 OF 60. THE 50 OF 60 DATE IS -- WELL, 48 OF 60 IS JUNE 8TH AND LAST DAY FOR TRIAL IS JUNE 20TH. ALL RIGHT. THANK YOU VERY MUCH.

(THE MATTER WAS CONTINUED TO TUESDAY, MAY 9, 2017, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

CASE NUMBER: BA438972
CASE NAME: PEOPLE VS. MARK FRISBY
LOS ANGELES, CA FRIDAY, JUNE 16, 2017
DEPARTMENT 131 HON. LESLIE A. SWAIN, JUDGE
REPORTER: MARY J. DAVIS, CSR NO. 7595
TIME: 2:10 P.M.
APPEARANCES:

DEFENDANT MARK FRISBY, PRESENT WITH COUNSEL, PATRICK THOMASON, DEPUTY ALTERNATE PUBLIC DEFENDER; JUSTIN FORD, DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.

THE COURT: CALLING THE CASE OF PEOPLE VS. MARK FRISBY, BA438972. MR. FRISBY IS PRESENT WITH COUNSEL. THE PEOPLE ARE REPRESENTED. WE'RE OUTSIDE THE PRESENCE OF THE JURY.

MR. FRISBY, BEFORE I CALL THE JURORS IN, I JUST WANTED TO KNOW IF YOU HAD ANY CHANGE OF HEART ABOUT NEGOTIATING A PLEA AGREEMENT OR CONSIDERING WHAT THE PLEA OFFER HAD BEEN PREVIOUSLY?

THE DEFENDANT: NO.

THE COURT: OKAY. ALL RIGHT. WE WILL GET THE JURORS UP AND START JURY SELECTION THEN AS SOON AS WE INTRODUCE THEM -- OR GET THEM, WILL PROBABLY BE ABOUT 15 MINUTES OR SO. SO YOU CAN TAKE MR. FRISBY BACK AND THEN WE WILL BRING YOU BACK OUT AS SOON AS THE JURORS ARE HERE.

(A RECESS WAS TAKEN FROM 2:11 P.M. UNTIL 2:40 P.M.)

THE COURT: GOOD AFTERNOON, LADIES AND GENTLEMEN. WE ARE ON THE RECORD IN THE CASE OF PEOPLE VS. MARK FRISBY, BA438972. MR. FRISBY IS PRESENT WITH COUNSEL. THE PEOPLE ARE REPRESENTED AND THE JURY PANEL HAS ALL ASSEMBLED.

COULD I BEGIN BY ASKING YOU ALL TO STAND UP TO BE SWORN IN BY THE CLERK.

THE CLERK: PLEASE LISTEN TO THE FOLLOWING STATEMENT:

DO YOU AND EACH OF YOU UNDERSTAND AND AGREE THAT YOU WILL ACCURATELY AND TRUTHFULLY ANSWER UNDER PENALTY OF PERJURY ALL QUESTIONS PROPOUNDED TO YOU CONCERNING YOUR QUALIFICATIONS AND COMPETENCY TO SERVE AS TRIAL JURORS IN THE MATTER PENDING BEFORE THIS COURT AND THAT FAILURE TO DO SO MAY SUBJECT TO YOU CRIMINAL PROSECUTION?

IF YOU AGREE WITH THIS STATEMENT, PLEASE ANSWER BY SAYING "I DO."

THE PROSPECTIVE JURY PANEL: I DO.

THE CLERK: THANK YOU. PLEASE BE SEATED.

THE COURT: ALL RIGHT. AGAIN, GOOD AFTERNOON, LADIES AND GENTLEMEN. MY NAME IS JUDGE LESLIE SWAIN AND I'M GOING TO BE PRESIDING OVER THIS TRIAL, SO THANK YOU VERY MUCH FOR COMING UP HERE. I KNOW THAT GETTING ALL THE WAY TO FRIDAY IN THE AFTERNOON YOU PROBABLY WERE

HOPING THAT YOU HAD MADE IT THROUGH THE WEEK AND I UNDERSTAND, I REALLY DO, THAT IT'S PROBABLY PRETTY DISAPPOINTING TO BE HERE AT THIS HOUR, BUT, YOU KNOW, JURY TRIALS START EVERY DAY OF THE WEEK IN THIS BUILDING AND SOMETIMES SOMEBODY HAS TO COME ON FRIDAY, SO I REALLY APPRECIATE THAT YOU ARE ALL HERE.

I THANK YOU IN ADVANCE FOR THE TIME AND ATTENTION THAT YOU'LL BE SPENDING ON THIS CASE, WHETHER IT IS JUST FOR THE JURY SELECTION PROCESS OR IF YOU ARE HERE FOR THE DURATION OF THE TRIAL. I KNOW THAT IN EITHER OF THOSE CASES, IN BOTH OF THOSE CASES, THIS IS INCONVENIENT FOR PEOPLE. I KNOW THAT FOR SOME OF YOU IT'S A REAL HARDSHIP IN A VARIETY OF WAYS. I KNOW A LOT OF YOU AREN'T GETTING PAID BY YOUR EMPLOYER TO BE HERE. UNFORTUNATELY, THAT'S NOT A BASIS FOR GETTING OFF OF JURY DUTY ON A SHORT TRIAL, SO SOME OF YOU ARE GOING TO BE INCONVENIENCED AND SOME OF YOU WILL BE CHALLENGED TO AN EVEN GREATER DEGREE, SO I WANT YOU TO KNOW THAT I DO NOT TAKE YOUR PRESENCE HERE FOR GRANTED.

IF IT WERE NOT FOR GOOD PEOPLE LIKE YOU WHO ANSWER YOUR SUMMONS AND COME IN FOR JURY DUTY, OUR CRIMINAL JUSTICE SYSTEM ABSOLUTELY COULD NOT FUNCTION. I'M GOING TO BE THE JUDGE OF THE LAW IN THIS CASE, BUT YOU, THE 12 OF YOU WHO ARE CHOSEN TO BE ON THE JURY, ARE GOING TO BE THE JUDGES OF THE FACTS. YOUR JOB WILL BE AS IMPORTANT AS MINE.

IN OUR COUNTRY WE DON'T DO -- WE DON'T CONDUCT TRIALS THE WAY THAT MANY COUNTRIES AROUND THE

WORLD DO, WHICH IS BY A TRIBUNAL OF PROFESSIONAL DECISION MAKERS, LIKE JUDGES OR EVEN IN MANY CASES BY A SINGLE PERSON. THE FOUNDERS OF OUR CONSTITUTION DECIDED THAT THE FAIRER WAY TO DO THIS WOULD BE TO GET 12 PEOPLE FROM THE COMMUNITY WHO ARE VETTED, THAT IS, QUESTIONED BY BOTH SIDES IN THE CASE TO DETERMINE THAT THEY COULD BE FAIR, TO BE THE ONES TO MAKE A DECISION AS IMPORTANT AS THE ONE IS IN THIS CASE ABOUT WHAT HAPPENED IN THE CASE BROUGHT AGAINST MR. FRISBY. SO THANK YOU VERY, VERY MUCH FOR COMING AND FOR THE TIME AND ATTENTION THAT YOU'RE GOING TO SPEND ON THIS CASE.

LET ME INTRODUCE THE REST OF THE COURT STAFF. AGAIN, MY NAME IS LESLIE SWAIN. WHENEVER YOU'RE HERE, I WILL BE HERE.

YOU MET MY JUDICIAL ASSISTANT OUT IN THE HALLWAY. HIS NAME IS DAVID YAGUCHI. DAVID HAS A LOT OF -- MR. YAGUCHI HAS A LOT OF DIFFERENT JOBS. HE WILL USHER THE JURORS IN AND OUT OFTEN WHILE THE TRIAL IS GOING ON. HE ROUNDS UP ATTORNEYS. HE MAKES ALL THE COMPUTER ENTRIES THAT ARE GENERATED BY ALL THE CASES THAT I CALL EACH DAY, WHICH IS MORE THAN JUST THE TRIAL CASE. IT MIGHT BE ANOTHER 20 MATTERS THAT COME THROUGH HERE ON A GIVEN DAY, SO HE HAS LOTS OF DIFFERENT JOBS.

THE COURT REPORTER IS MISS MARY DAVIS. SHE IS MAKING A RECORD OF EVERYTHING THAT'S BEING SAID IN THE COURTROOM. THE REASON THAT WE DO THAT IS SO THAT IN THE FUTURE WE CAN LOOK BACK AND KNOW WITH CERTAINTY EXACTLY WHAT WAS SAID BY ALL THE PARTICIPANTS DURING THE

TRIAL.

SO IT'S IMPORTANT FOR TO YOU REMEMBER THAT SHE'S GOING TO BE TAKING DOWN WHAT YOU SAY WHEN YOU'RE TALKING JUST LIKE SHE'S TAKING DOWN WHAT I'M SAYING RIGHT NOW. SO KEEP IN MIND THAT IN ORDER FOR HER TO WRITE DOWN WHAT YOU SAY, SHE HAS TO HEAR YOU, SO KEEP YOUR VOICE UP, PLEASE. USE REAL WORDS INSTEAD OF THINGS LIKE "UH-HUH" OR "HUH-UH" OR JUST SHAKING YOUR HEAD 'CAUSE THAT'S REALLY DICEY IN TERMS OF HOW IT GETS INTERPRETED.

AND PLEASE, ALSO, TRY TO KEEP IN MIND AND THIS IS NOT INTUITIVE FOR MOST PEOPLE, TRY AND KEEP IN MIND THAT SHE CAN ONLY TAKE DOWN ONE PERSON SPEAKING AT A TIME, SO WAIT UNTIL I FINISH WITH MY QUESTION TO YOU BEFORE YOU COME BACK WITH AN ANSWER SO THAT WE'RE NOT BOTH TALKING AT THE SAME TIME, ALL RIGHT?

THE BAILIFF IN OUR COURTROOM IS DEPUTY JUAN PADILLA. HE IS A DEPUTY IN LOS ANGELES SHERIFF'S DEPARTMENT. THE BAILIFF'S JOB IS, AS YOU WOULD IMAGINE, HE'S KIND OF THE PEACEKEEPING PERSON IN THE COURTROOM. HE MAKES SURE THAT EVERYBODY ABIDES BY THE RULES AND MAKES SURE THAT THE TRIAL PROCEEDS IN AN ORDERLY WAY.

DO ANY OF YOU RECOGNIZE MYSELF OR ANY OF THE COURT STAFF THAT I'VE JUST INTRODUCED? OKAY. THAT'S GOOD.

WE ARE GOING TO BE RECESSING EARLY TODAY BECAUSE OF A PRE-EXISTING CONFLICT FOR THIS AFTERNOON, BUT I DO WANT TO TELL YOU A COUPLE OF THINGS. YOU HAVE

THE COURTROOM TELEPHONE NUMBER ON YOUR BADGE. IT'S ON THE BOTTOM OF THAT YELLOW TAG AND I NEED YOU TO MAKE SURE THAT YOU KNOW YOU HAVE THAT PHONE NUMBER AND THAT YOU CALL THAT PHONE NUMBER IF YOU ARE RUNNING LATE OR SOMETHING URGENT HAPPENS THAT PREVENTS YOU FROM COMING BACK TO COURT ON MONDAY.

YOU ALL ARE GOING TO BE ORDERED TO COME BACK ON MONDAY. I'LL TELL YOU MORE ABOUT THE CASE AND ABOUT WHAT'S GOING TO -- YOUR ROLE IS GOING TO BE AND I'LL TALK TO YOU ABOUT THE PROCESS THAT WE'RE GOING TO GO THROUGH WITH THE JURY SELECTION. THEN WE'LL JUST START.

THE PURPOSE OF JURY SELECTION IS TO CHOOSE 12 PEOPLE WHO CAN BE FAIR AND IMPARTIAL TO BOTH SIDES. THAT INCLUDES -- THAT OFTEN INVOLVES INTERVIEWING YOU TO A CERTAIN EXTENT BY MYSELF AND BY BOTH OF THE ATTORNEYS, SO THAT'S ALL GOING TO START ON MONDAY. WE'LL BE RESUMING AT 10:30.

THERE WILL NOT BE ANOTHER TIME DURING THE COURSE OF THE TRIAL OR THE JURY SELECTION WHEN YOU HAVE TO BE HERE AT 8:00 O'CLOCK LIKE YOU DID THIS MORNING OR 8:30. AND THE REASON, AS I ALLUDED TO EARLIER, IS THAT I HAVE A CALENDAR OF OTHER CASES THAT I HAVE TO CALL IN THE MORNING BEFORE I START THE TRIAL. THESE ARE OTHER CASES THAT ARE AT DIFFERENT POINTS IN THEIR PROCEEDINGS. MAYBE IT'S A SENTENCING. MAYBE IT'S A PRETRIAL CONFERENCE, BUT THEY'RE BRIEF, TYPICALLY, BUT THERE ARE MANY OF THEM. SO RATHER THAN HAVE YOU COME IN EARLY AND

(THE MATTER WAS CONTINUED TO TUESDAY, NOVEMBER 1, 2016, AT 8:30 A.M. FOR FURTHER PROCEEDINGS.)

SIT AROUND AND WAIT FOR US, I'LL TRY EACH DAY TO ESTIMATE WHAT TIME I WILL BE READY TO START THE TRIAL. GENERALLY, IT'S GOING TO BE 10:30.

THIS, I WILL TELL YOU RIGHT NOW, THAT THE TRIAL ESTIMATE IN THIS CASE IS THAT IT'S ONLY -- THAT IT'S GOING TO LAST ABOUT FIVE DAYS, SO IT'S SHORTER THAN THE AVERAGE TRIAL IN THIS BUILDING, WHICH IS SEVEN DAYS SO THAT'S THE GOOD NEWS. I KNOW THAT SOME OF YOU MIGHT NEED TO MAKE PLANS, SO I WANTED YOU TO KNOW THAT IN ADVANCE.

OKAY. DURING -- JUST A MINUTE, SIR. DURING THE TIME THAT YOU'RE HERE WITH US AND PARTICIPATING IN THE JURY SELECTION AND, CERTAINLY, IF YOU'RE ASKED TO BE ON THIS JURY, I WILL TELL YOU EVERY TIME YOU LEAVE THE COURTROOM THAT YOU ARE NOT ALLOWED TO DISCUSS THIS CASE WITH ANYBODY. THAT MEANS NOT ANYBODY AT HOME, AT WORK, NOT EVEN AMONG YOURSELVES. RIGHT NOW YOU DON'T KNOW ANYTHING ABOUT THE CASE, SO THERE'S NOT MUCH TO TALK ABOUT, BUT VERY SOON I'M GOING TO TELL YOU WHAT THE CHARGES ARE ABOUT. I'M GOING TO INTRODUCE TO YOU THE ATTORNEYS AND THE DEFENDANT AND YOU'RE GOING TO START, YOU KNOW, HAVING SOME INTEREST IN IT, BUT YOU'RE NOT ALLOWED TO DISCUSS IT WITH ANYBODY. AND THE REASON IS, THAT I WOULD NOT WANT YOU TO INADVERTENTLY BE INFLUENCED BY SOMETHING THAT SOMEBODY ELSE MIGHT SAY TO YOU.

IN A JURY TRIAL IT IS IMPERATIVE THAT ALL THE JURY MEMBERS CONSIDER THE SAME EVIDENCE WHEN THEY GO

TO DELIBERATE ON THIS CASE AND THE EVIDENCE IS THE TESTIMONY OF THE WITNESSES, ANY EXHIBITS THAT ARE ADMITTED, SUCH AS, PHOTOGRAPHS AND THAT SORT OF THING OR ANY AGREEMENTS BETWEEN THE ATTORNEYS ABOUT A CERTAIN FACT. THAT IS THE ONLY THING THAT YOU'RE ALLOWED TO CONSIDER, SO THAT'S WHY THERE IS A VERY STRICT RULE THAT YOU NOT DISCUSS THE CASE WITH SOMEBODY ELSE.

AND, ALSO, EQUALLY STRICT RULE THAT YOU DO NOT DO ANY RESEARCH ON THE CASE OR ABOUT ANY ASPECT OF THE CASE. THAT WASN'T THE PROBLEM 20 YEARS AGO, BUT NOW WITH THE INTERNET PEOPLE COME UP WITH ALL KINDS OF THINGS TO DO TO LOOK UP ON A CASE AND THAT IS A VERY SERIOUS VIOLATION OF THE COURT ORDER. IT COULD ACTUALLY RESULT IN A CRIMINAL CHARGE BEING BROUGHT AGAINST YOU IF YOU KNOWINGLY AND WILLFULLY VIOLATE THAT RULE, SO PLEASE DO NOT DO ANY RESEARCH ON ANYTHING RELATED TO THE CASE.

WE CAN'T START ON MONDAY MORNING UNTIL ALL OF YOU ARE HERE, SO PLEASE TRY YOUR VERY BEST TO GET HERE ON TIME, ALLOW YOURSELF PLENTY OF TIME FOR TRAFFIC, ET CETERA. IF YOU ARE RUNNING LATE, PLEASE CALL THE COURTROOM AND LET THEM KNOW -- LET US KNOW SO WE CAN TELL THE OTHER 59 JURORS TO GO GET A CUP OF COFFEE OR SOMETHING, OKAY?

SO WE WILL GET INTO MUCH MORE DETAIL ABOUT THE CASE AND WE'LL GET TO KNOW MANY OF YOU WHEN WE RESUME ON MONDAY MORNING, THAT IS JUNE 19TH AT 10:30. YOU WILL NO LONGER GO BACK TO THE JURY ROOM. YOU COME DIRECTLY UPSTAIRS TO THE 15TH FLOOR, OKAY? AND AS WE

GET GOING, MANY OF YOU WILL BE RELEASED, YOU KNOW, FOR THE CASE, BUT IT'S GOING TO TAKE -- THERE'S A PROCESS THAT WE HAVE TO GO THROUGH. SO, AGAIN, THANK YOU ALL FOR BEING HERE. WE'LL SEE YOU ON MONDAY MORNING AT 10:30 THANK YOU.

IF YOU HAVE QUESTIONS, I CAN'T SPEAK TO YOU DIRECTLY. YOU CAN SPEAK TO THE BAILIFF, BUT YOU ARE ALL DISMISSED FOR TODAY.

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT, OUTSIDE THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT: MR. FRISBY, I UNDERSTAND THERE WAS SORT OF A SCREW UP THIS MORNING DOWNSTAIRS IN THE LOCKUP. I DON'T KNOW WHAT HAPPENED. IT DOESN'T MATTER, FRANKLY, HOW IT HAPPENED AT THIS POINT, BUT I JUST WANT TO MAKE SURE THAT YOU UNDERSTAND THAT BECAUSE WE'VE GOT THESE 60 PEOPLE HERE WAITING TO GET STARTED EACH DAY. I'M GOING TO NEED TO MAKE SURE THAT YOU COOPERATIVE AND YOU ALWAYS HAVE BEEN BEFORE, SO I EXPECT THAT WILL CONTINUE BECAUSE WE HAVE TO GET THE TRIAL STARTED AND MOVING AND SO, THAT'S GOING TO REQUIRE YOU TO BE ON YOUR BEST BEHAVIOR, OKAY? I'M SURE I CAN COUNT ON THAT, SAME WITH THE ATTORNEYS. OKAY. HAVE A GOOD WEEKEND.

///

///

///

(THE MATTER WAS CONTINUED TO MONDAY, JUNE 19, 2017, AT 10:30 A.M. FOR FURTHER PROCEEDINGS.)

Exibit 11

pages: 3 numbered 175, 176, 177

desription: Reasonable doubt in question, Lack of evidence in question
Prosecuting attorney Justin Ford gives closing argument as to the fact that "Mr Thomason (~~attorney~~ attorney for the plaintiff Mark Frisby as appointed by the state of California and in contrast to Mark Frisby's request to represent himself) is asking you not to believe his client.

Lines 2 and 3 of page 176- In essence, Mr Thomason is asking you not to believe his client.

Mark frisby claims that this contributes to innefective assistance of councl.

IS TO DETERMINE IF THE PEOPLE HAVE PROVED THE CASE TO YOU BEYOND A REASONABLE DOUBT AND IT IS TO BE THE JUDGES OF THE FACTS. IT IS NOT TO MAKE UP A BETTER STORY. IT IS NOT TO SPECULATE ABOUT EVIDENCE YOU HAVE NOT HEARD OR RECEIVED. IT IS NOT TO CONSIDER ANY CONSEQUENCES AND IT IS NOT TO REQUIRE AN ABSENCE OF DOUBT BEFORE YOU CONVICT.

THE SECOND CATEGORY OF THINGS IS WHAT HAPPENED PROOF BEYOND A REASONABLE DOUBT? IT IS NOT PROOF BEYOND A SHADOW OF A DOUBT, PROOF BEYOND ALL DOUBT, PROOF TO AN ABSOLUTE CERTAINTY AND JURIES CONVICT USING PROOF BEYOND A REASONABLE DOUBT ALL THE TIME. THE DEFINITION THAT YOU RECEIVED IN THE INSTRUCTIONS IS THAT LEAVES YOU WITH AN ABIDING CONVICTION THAT THE CHARGE IS TRUE AND NEED NOT ELIMINATE ALL POSSIBLE DOUBT.

THE THIRD IS THAT WHAT ATTORNEYS SAY IS NOT EVIDENCE. THAT GOES FOR ME. IT GOES FOR MR. THOMASON.

SO LET'S TALK ABOUT SOME THINGS THAT DEFENSE COUNSEL SAID. HE TOLD YOU THAT THE DEFENDANT WAS DRINKING BEER AND TEQUILA ON AUGUST 13TH OF 2015, BUT THE ONLY EVIDENCE THAT WE HAVE OF THAT IS A STATEMENT THAT THE VICTIM GAVE IN THE HOSPITAL TO A POLICE DETECTIVE. WHEN MR. ORTIZ WAS HERE IN COURT HE DIDN'T REMEMBER SEEING ANYTHING LIKE THAT. HE DID NOT EVEN REMEMBER HAVING ANY INTERACTIONS WITH THE DEFENDANT PRIOR TO HIS BEING STRUCK IN THE BACK OF THE HEAD WITH A HAMMER.

THE DEFENDANT TOOK THE STAND AND DENIED

HIMSELF THAT HE HADN'T ANYTHING TO DRINK OTHER THAN HALF A BEER. IN ESSENCE, MR. THOMASON IS ASKING YOU NOT TO BELIEVE HIS CLIENT.

THE SECOND THING THAT MR. THOMASON TALKED ABOUT WAS THE MEDICAL RECORDS IN PEOPLE'S 8 TO SHOW THAT MR. ORTIZ HAD BEEN DRINKING. SO LET'S TAKE A CLOSER LOOK AT WHAT THOSE RECORDS SHOW VERY BRIEFLY. THAT SAME PAGE OF PEOPLE'S 8 SHOWS THAT ON AUGUST THE 14TH OF 2015, AT 12:14 IN THE MORNING AFTER MR. ORTIZ HAD BEEN REPEATEDLY STRUCK IN THE BACK OF THE HEAD WITH A HAMMER AND LOST CONSCIOUSNESS, THAT HE WAS BEING INTERVIEWED BY SOME MEDICAL PROFESSIONAL AND THAT THAT MEDICAL PROFESSIONAL PUT QUESTION MARK INTOXICATED. I THINK IT STANDS TO REASON THAT SOMEONE WHOSE SUFFERED AND CONCUSSED, SUFFERED MULTIPLE TRAUMATIC INJURIES, MIGHT APPEAR INTOXICATED, BUT THAT'S IT. THE QUESTION MARK BEFORE INTOXICATED, THE FACT THAT ORTIZ WAS BEATEN IN THE BACK OF THE HEAD WITH A HAMMER IS ALL THE EVIDENCE THAT EXISTS TO CORROBORATE MR. THOMASON'S STATEMENT THAT ORTIZ WAS DRINKING AND WHAT ORTIZ TOLD US THAT HE DOES NOT DRINK ALCOHOL.

WHAT ELSE DID HE SAY? THAT THE DEFENDANT TRIED TO HELP ORTIZ. WELL, OTHER THAN THE DEFENDANT'S OWN SELF-SERVING STATEMENT, WE HAVE NOTHING.

FINALLY, HE TRIED TO TELL YOU THAT THE DEFENDANT WAS INTOXICATED. THIS IS AN IMPORTANT DISTINCTION TO MAKE. BEYOND THE FACT THAT WE DON'T HAVE EVIDENCE THAT THE DEFENDANT WAS DRINKING, YOU HAVE TO

HAVE EVIDENCE THAT HE WAS INTOXICATED AND THERE'S NOT A SINGLE PIECE OF EVIDENCE THAT POINTS TO THAT. IT'S NOT MERELY ENOUGH THAT HE CONSUMED ALCOHOL. IF YOU BELIEVE WHAT MR. THOMASON SAID, HE HAD TO DRINK ENOUGH THAT IT WOULD IMPAIR HIS ABILITY TO INFORM -- I'M SORRY, TO FORM THE INTENT, THAT WILLFUL, DELIBERATE, PREMEDITATED INTENT TO KILL. YOU HAVE NO EVIDENCE.

SO WHEN IT COMES TO THE INTOXICATION, DO YOU BELIEVE THE DEFENDANT OR DO YOU BELIEVE HIS ATTORNEY? BECAUSE THE DEFENDANT SAID HE DRANK AT MOST HALF A BEER. NEITHER WITNESS IN COURT, MR. SAMANO NOR MR. ORTIZ, SAID THEY SAW THE DEFENDANT DRINK ANYTHING. IN ORDER TO BUY THAT DEFENSE, YOU HAVE TO BELIEVE DEFENSE COUNSEL OVER HIS OWN CLIENT AND THERE IS NO EVIDENCE THAT SHOWS THAT THE DEFENDANT COULD NOT INTEND TO KILL OR DELIBERATE AND PREMEDITATE BECAUSE OF ALCOHOL.

SO LET'S TALK ABOUT THE SOME OTHER GUY DEFENSE. THE DEFENDANT TOOK THE STAND AND SAID I DIDN'T KNOW ANYTHING ABOUT IT, DIDN'T HAVE ANYTHING TO DO WITH IT, SHOWED UP AND HE WAS ALREADY ON THE GROUND. WELL, BOTH ORTIZ AND SAMANO IDENTIFIED THE DEFENDANT AND THIS IS SIGNIFICANT BECAUSE BOTH OF THOSE GENTLEMEN HAD SEEN THE DEFENDANT BEFORE. MR. SAMANO LIVES NEXT DOOR AND MR. ORTIZ HAD WORKED AT THAT PROPERTY BEFORE. THEY RECOGNIZED HIM BY FACE, BUT NOT BY NAME. SO THIS IS NOT STRANGERS IDENTIFYING SOMEBODY OUT OF THE BLUE.

THE DEFENDANT IS SEEN BY MR. SAMANO HOLDING

Exibit 12

pages 3 - 1,2,3

Description. 2n appelate Division(a) case # BA438972

Coar denied petitioner the right to reopen his appeal in Pro Per to adress issues raised here on habeus corpus.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION a

COURT OF APPEAL – SECOND DIST.
FILED
Feb 22, 2019
DANIEL P. POTTER, Clerk
D. LEE Deputy Clerk

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Respondent,<br>v.<br>MARK R. FRISBY,<br>Defendant and Appellant. | B295407<br>(Super. Ct. No. BA438972)<br>Los Angeles County<br>ORDER |

THE COURT:

On September 6, 2018, this court affirmed the judgment, entered on July 20, 2017, which sentenced Mark R. Frisby to a term of imprisonment of seven years. (*People v. Frisby* (B284198) [nonpub. opn.].)

On January 8, 2019, Frisby filed a notice in which he purported to appeal again from the judgment entered on July 20, 2017, claiming that his trial defense counsel had rendered ineffective assistance.

Green is not entitled to a second appeal from the July 20, 2017 judgment. In any event, the purported appeal is untimely. (Cal. Rules of Court, rule 8.308(a) [notice of appeal must be filed with 60 days after rendition of judgment].)

The appeal initiated by the notice filed on January 8, 2019 is dismissed.

Elwood Lui, Administrative Presiding Justice

Mark Raymond Frisby
CDC #: BD-8356 DOB: 10/19/1978
California Rehabilitation Center
P.O. Box 3535
Norco, CA 92860

Division a
THE PEOPLE,
Plaintiff and Respondent,
v.
MARK RAYMOND FRISBY,
Defendant and Appellant.
B295407

# Exibit 13

Pages: 19. pg 88-106

Description: Mark Frisby's Testimony - The defendant + Pat Thomason - Mentiones calling a witness

1 to impeach Vincent Ortiz, however, no witness is ever called. pg 106 lines 24-27

2 Judge Leslie Swain shows partiality to the plaintiff in allowing **Doyle error** pg 106 lines 1 and 2.

3. pg 106 line 25 - Detective Romero. Innefective assistance of council. In a case where impeachment of prosecutions key witness could have praved petitioners innocence.

4. Witness Mark Frisby's testimony as evidence that he did not have any of the mental health problems the prosecution, trial court and mental health employees of Los Angeles and San Bernadino County Claimed. Miranda violation in subjecting Mark Frisby to cruel and unusual punishment for nearly two years in attempt to force a confession.

5. Mark Frisby testifies to his innocence, a claim that defence attorney Pat Thomason rebukes in closing arguments, Exibit 13 and Exibit 4. false evidence used to convict Miller v. Pate, 386 U.S. 1 (1967)

THE COURT: OKAY. MR. THOMASON, DO YOU WISH TO GIVE AN OPENING STATEMENT AT THIS TIME?

MR. THOMASON: I WOULD ASK THE COURT FOR A SHORT RECESS.

THE COURT: CAN WE DO IT AT SIDEBAR?

MR. THOMASON: NO. I NEED A COUPLE MINUTES.

THE COURT: OKAY. LADIES AND GENTLEMEN, I'M GOING TO HAVE YOU GO SIT IN THE JURY ROOM FOR A FEW MINUTES. IT'S MORE COMFORTABLE THERE. LEAVE YOUR NOTEBOOKS IN YOUR SEATS. YOU'LL GO THROUGH THIS DOOR AND IT'S RIGHT ACROSS THE HALL CATTY-CORNER. IT SAYS "JURY ROOM" FOR DEPARTMENT 131. AND I THINK DAVID'S GOING TO BE THERE, SO --

(A RECESS WAS TAKEN FROM 2:02 P.M. UNTIL 2:14 P.M.)

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT, OUTSIDE THE PRESENCE OF THE JURY:)

THE COURT: MR. THOMASON, ARE YOU GOING TO PUT ON ANY EVIDENCE?

MR. THOMASON: YES, YOUR HONOR. MR. FRISBY HAS ELECTED TO TESTIFY.

THE COURT: OKAY. WILL YOU BE GIVING AN OPENING?

///

///

(THE JURY ENTERED THE COURTROOM AT 2:14 P.M.)

THE COURT: ALL RIGHT. WE'RE BACK ON THE RECORD IN THE FRISBY MATTER. THE JURY IS NOW PRESENT.

MR. THOMASON, DOES THE DEFENDANT WISH TO CALL ANY WITNESSES?

MR. THOMASON: THANK YOU, YOUR HONOR. WE WAIVE OPENING STATEMENT AND CALL MARK FRISBY TO THE STAND.

THE COURT: OKAY.

THE CLERK: STOP THERE. FACE THIS WAY AND RAISE YOUR RIGHT HAND.

YOU DO SOLEMNLY STATE THAT THE TESTIMONY YOU'RE ABOUT TO GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH, SO HELP YOU GOD.

THE WITNESS: I DO.

THE CLERK: PLEASE HAVE A SEAT IN THE WITNESS STAND. PULL THE MICROPHONE UP TO YOU A LITTLE BIT, SIR.

THE COURT: WOULD YOU PULL THE MICROPHONE A LITTLE BIT, MR. FRISBY.

MARK FRISBY,

THE DEFENDANT HEREIN, CALLED AS A WITNESS ON HIS OWN BEHALF, HAVING BEEN FIRST DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

THE CLERK: WOULD YOU PLEASE STATE AND SPELL BOTH YOUR FIRST AND YOUR LAST NAME, FOR THE RECORD.

THE WITNESS: MARK FRISBY, M-A-R-K F-R-I-S-B-Y.
THE CLERK: THANK YOU.

DIRECT EXAMINATION

BY MR. THOMASON:

Q GOOD AFTERNOON, MR. FRISBY.
A GOOD AFTERNOON.
Q MR. FRISBY, WHERE WERE YOU LIVING ON AUGUST 13TH OF 2015?
A 735 1/2 EAST VERNON AVENUE.
Q AND HOW LONG HAVE YOU LIVED THERE?
A ABOUT EIGHT MONTHS.
Q ON THE DATE OF AUGUST 13TH OF 2015, WERE YOU AT HOME?
A YES.
Q AND WHAT WERE YOU DOING?
A WATCHING TV.
Q FROM TIME TO TIME DID YOU GO OUTSIDE IN THE AFTERNOON?
A I DID.
Q PRIOR TO THAT, DID YOU NOTICE MR. VICENTE ORTIZ, THE PERSON WHO YOU'D SEEN EARLIER TESTIFY?
A I DID.
Q HOW DID YOU KNOW HIM?
A HE'S THE MAINTENANCE GUY THERE.
Q AND HAD YOU EVER INTERACTED WITH HIM IN THE EIGHT MONTHS THAT YOU LIVED THERE?
A YES.

Q HOW SO?

A FRIENDLY CONVERSATIONS. WE'VE HAD BEERS TOGETHER A FEW TIMES.

Q THESE CONVERSATIONS --

A I BOUGHT HIM LUNCH A FEW TIMES. HE BOUGHT -- HE MIGHT HAVE BOUGHT LUNCH A FEW TIMES ONCE OR TWICE.

Q WHEN YOU CONVERSED WITH HIM, WAS IT ENGLISH OR SPANISH?

A A LITTLE BIT OF BOTH.

Q YOU SAID YOU SOMETIMES HAD BEERS WITH MR. ORTIZ?

A YES.

Q ON THE DATE OF AUGUST 13TH DID YOU SEE THAT MR. ORTIZ BECAME INJURED?

A I DID.

Q DID YOU SEE HOW HE BECAME INJURED?

A I DID NOT.

Q DID YOU HAVE ANY BEERS ON THAT DAY?

A I HAD -- AROUND NOON I HAD LEFT FOR LUNCH, ASKED MR. ORTIZ IF HE WAS HUNGRY. HE SAID, "NO." I ASKED HIM IF HE WANTED SOME BEER. HE SAID, "YES." I WENT TO THE STORE AND BOUGHT A 6-PACK OF BEER AND I HAD ONE BEER. WELL, I DIDN'T ACTUALLY DRINK AN ENTIRE BEER, BUT I HAD SIX. AND ONE BEER WITH MR. ORTIZ AND LEFT FOUR BEERS OUTSIDE WITH MR. ORTIZ.

Q DID YOU HAVE ANYTHING BESIDES BEER THAT DAY?

A NO. THAT WAS AROUND LUNCH TIME.
Q AFTER YOU HAD THE BEERS WITH MR. ORTIZ, DID YOU GO BACK INTO THE APARTMENT?
A I DID.
Q DID YOU COME OUT AT SOME TIME?
A I DID.
Q WHAT DID YOU SEE?
A I SAW MR. ORTIZ LAYING ON THE GROUND, APPEARED TO BE UNCONSCIOUS AND BLEEDING.
Q WHAT DID YOU DO?
A I STARTED -- I ASKED HIM IF HE WAS OKAY. I TRIED TO WAKE HIM UP.
Q NOW, PRIOR TO THIS, HAD YOU HAD ANY PROBLEMS WITH MR. ORTIZ?
A NO.
Q ANY ARGUMENTS WITH MR. ORTIZ?
A NO.
Q DID YOU HAVE ANY ILL WILL TOWARDS MR. ORTIZ FOR ANY REASON?
A NO.
Q DID YOU HIT MR. ORTIZ WITH A HAMMER?
A I DID NOT.
Q DID YOU HIT HIM WITH ANYTHING?
A NO.
Q DID YOU SEE ANYBODY HIT HIM WITH ANYTHING?
A NO.
Q WHAT DID YOU DO AFTER YOU SAW HIM INJURED?
A I ASKED HIM IF HE WAS OKAY. I ATTEMPTED TO

WAKE HIM UP. HE WAS UNCONSCIOUS.

Q HOW DID HE APPEAR AT THAT TIME? CAN YOU DESCRIBE HIS INJURIES?

A INITIALLY IT APPEARED LIKE MAYBE HE WAS ASLEEP, ASLEEP.

Q WHERE WAS HE APPARENTLY ASLEEP AT?

A IN THE AREA BEHIND MY APARTMENT.

Q WE'VE SEEN PICTURES. SHOWING YOU PEOPLE'S 1, DOES THAT SHOW THE AREA WHERE YOU SAW MR. ORTIZ LYING?

A YES.

Q IS THAT THE CRAWL SPACE AREA WE'VE HEARD ABOUT SO FAR?

A HE WAS IN THAT AREA.

Q IS THERE ANYBODY ELSE AROUND HIM AT THAT TIME?

A NO.

Q DID YOU SEE ANYBODY RUNNING AWAY FROM HIM AS YOU CAME OUT AND SAW HIM LYING THERE?

A I DIDN'T.

Q EXCUSE ME?

A NO.

Q WAS THERE ANY BLOOD ON MR. ORTIZ?

A WHEN MR. ORTIZ STOOD UP I NOTICED BLOOD ON HIS NECK. IT APPEARED LIKE THERE WAS BLOOD ON HIS HEAD.

Q HOW WAS IT THAT MR. ORTIZ CAME TO STAND UP? CAN YOU DESCRIBE THAT?

A I GRABBED HIS ARM AND I SAID "HEY,

VINCENT." AND HE WOKE UP.

Q WAS HE THEN ABLE TO WALK AROUND A LITTLE BIT?

A YES.

Q DID YOU STAY THERE WITH HIM?

A I STAYED THERE. HE GOT UP. I STAYED THERE WITH HIM, YES. I STAYED THERE WITH HIM WHEN HE STOOD UP.

Q DID ANYBODY ELSE COME TO HELP YOU WITH MR. ORTIZ?

A BEFORE THAT, BEFORE I WOKEN HIM UP, NO. I GUESS THE ANSWER TO THAT QUESTION IS NO.

Q HOW ABOUT AFTER HE STOOD UP, ANYBODY ELSE FROM THE APARTMENT COMPLEX COME BY AND TRY TO HELP?

A NO.

Q DO YOU KNOW A PERSON NAMED ROSA WHO LIVED IN THE AREA?

A YES.

Q DID YOU SEE HER?

A I SAW HER, YES.

Q WHAT DID YOU SEE HER DO?

A SHE SAID THAT I HAD HIT MR. ORTIZ. SHE SAID, "IT WAS HIM. IT WAS HIM." THAT WAS HER WORDS WHEN I SAW ROSA.

Q AND WHO WAS SHE SAYING THAT TO?

A THE POLICE.

Q YOU WERE THERE WHEN THE POLICE CAME?

A I WAS.

Q DID YOU SEE ANY RESCUE AMBULANCE OR PARAMEDICS COME?
A YES.
Q DO YOU KNOW THE LAST WITNESS, MIGUEL SAMANO, THAT YOU SAW?
A NOT PERSONALLY.
Q HAD YOU EVER HAD ANY TROUBLES WITH HIM?
A NO.
Q HOW ABOUT WITH ROSA, ROSA ROSALES, ANY TROUBLES WITH HER?
A NO.
Q HAVE YOU EVER HAD ANY RUN-INS WITH ANYBODY AT THAT APARTMENT AT 735 EAST VERNON?
A YES.
Q BESIDES THE RESIDENCE AT THAT APARTMENT COMPLEX, HAD YOU EVER SEEN ANY OTHER PEOPLE AROUND THERE?
MR. FORD: OBJECTION, VAGUE AS TO TIME.
THE COURT: SUSTAINED.
THE DEFENDANT: YES.
THE COURT: HOLD ON.
BY MR. THOMASON:
Q ON AUGUST 13TH OF 2015, DID YOU SEE PEOPLE IN THE AREA OF THE APARTMENT COMPLEX ON EAST VERNON THAT WERE NOT RESIDENTS THERE?
A I HAVE.
Q HOW ABOUT THAT MORNING?
A THAT MORNING, NO.

Q OTHER THAN THE ONE BEER YOU TOLD US ABOUT, HAD YOU HAD ANY OTHER DRINKS?
A NO, SIR.
Q HOW ABOUT ANY KIND OF DRUG, ANYTHING?
A NO.
Q WERE YOU FEELING OKAY THAT DAY?
A WAS FEELING GOOD.
Q HAD YOU SEEN A PICTURE OF PEOPLE'S -- PEOPLE'S 2, APPARENTLY SHOWS A HAMMER LAYING THERE, DO YOU SEE THAT?
A I DO.
Q DID YOU SEE THAT HAMMER ON THAT DAY?
A NO.
Q DID YOU SEE A HAMMER ON THAT DAY?
A NO.
Q DO YOU HAVE ANY EXPLANATION AS TO WHY MR. ORTIZ WOULD COME IN HERE AND SAY THAT HE SAW YOU HIT HIM?
MR. FORD: OBJECTION, CALLS FOR SPECULATION.
THE COURT: SUSTAINED.
BY MR. THOMASON:
Q YOU WERE THERE WHEN THE POLICE ARRIVED? YOU WERE THERE AT THE SCENE WHEN THE POLICE ARRIVED?
A YES.
Q DID THEY ARREST YOU THAT DAY?
A YES.
Q DID THEY SHOW YOU ANY PICTURES OF ANY HAMMERS OR ANYTHING?

A NO.

Q DID MR. ORTIZ SAY ANYTHING ABOUT WHAT HAPPENED TO HIM TO YOU?

A NO.

Q DID YOU HAVE ANY REASON IN THE WORLD TO HIT HIM WITH A HAMMER?

A NO.

Q DID YOU HIT HIM WITH A HAMMER?

A NO.

MR. THOMASON: THANK YOU, YOUR HONOR.

THE COURT: MR. FORD, ANY CROSS?

CROSS-EXAMINATION

BY MR. FORD:

Q GOOD AFTERNOON, MR. FRISBY.

A GOOD AFTERNOON.

Q SO ON AUGUST 13TH OF 2015, ABOUT WHAT TIME DID YOU GET UP?

A ABOUT 9:30.

Q OKAY. AND WHAT WAS THE FIRST THING YOU DID WHEN YOU GOT UP?

A TURNED THE TV ON.

Q WHAT WERE YOU WATCHING?

A I DON'T REMEMBER.

Q OKAY. ABOUT HOW LONG DID YOU STAY AND WATCH THE TELEVISION?

A MOST OF THE DAY.

Q ALL RIGHT. AT WHAT POINT DID YOU HAVE YOUR

FIRST INTERACTION WITH MR. ORTIZ?

A AROUND 10:30.

Q ALL RIGHT. AND WHAT WAS THAT? WHAT DID THAT CONVERSATION -- WHAT WAS THAT CONVERSATION ABOUT?

A MR. ORTIZ HAD ARRIVED FOR WORK AND HE SAID FRISBY -- YOU KNOW, IT WAS "MARCO." THAT'S WHAT HE CALLED ME, "MARCO." SAID, "MARCO." HE WAS OUTSIDE, SO I HEARD HIM OUTSIDE AND I CAME OUTSIDE AND SAID, YOU KNOW, "GOOD MORNING" AND WE TALKED FOR A FEW MINUTES ABOUT SOMETHING RANDOM, "HOW ARE YOU DOING TODAY," CONVERSATION. I GUESS HE'S WORKING ON THE PLUMBING AGAIN, SO --

Q WAS THAT CONVERSATION --

A THAT WAS THE CONVERSATION. I GUESS THAT'S WHAT IT WAS ABOUT. I THOUGHT MAYBE HE WANTED TO BORROW THE ELECTRICITY OR SOMETHING FOR THE EXTENSION CORD. I'VE DONE THAT BEFORE. SO OTHER THAN THAT, I GUESS HE WAS JUST SAYING GOOD MORNING TO ME.

Q AND DID THE -- WAS THAT CONVERSATION IN ENGLISH?

A YES, MOSTLY.

Q WHAT TIME DID YOU LEAVE TO GO GET BEER?

A AROUND 12:00, 12:30. I'D SAY AROUND 12:00.

Q THE ONE BEER THAT YOU HAD -- THAT YOU HAD THAT DAY THAT YOU TALKED ABOUT WITH YOUR ATTORNEY, WHEN DID YOU DRINK THAT?

A I IT WAS MORE OF A HABIT JUST TO GO AND HAVE THE BEER. I DIDN'T ACTUALLY DRINK THE BEER. IT'S

A HABIT OF HAVING A BEER WITH VINCENT. USUALLY THE LANDLORD WHEN VINCENT IS WORKING WOULD SHOW UP, VICTOR. AND WE'LL HAVE A BEER TOGETHER. HE WASN'T THERE YET. THE BEER WOULD OFTEN GO INTO -- THERE'S A SMALL MINI FRIDGE, SO I LEFT IT OUTSIDE. IF VINCENT WANTED TO HAVE A BEER, IT'S IN THE MINI FRIDGE. IT'S IN THE GARAGE WHERE IT WAS STORED.

Q DO YOU KNOW VICTOR'S LAST NAME?

A IT'S IN MY MIND RIGHT NOW. IT STARTS WITH AN M. IT'S BEEN ALMOST TWO YEARS SINCE I'VE TALKED TO HIM.

Q AND YOUR TESTIMONY TODAY IS THAT YOU AND VICENTE AND VICTOR WOULD HANG OUT TOGETHER AND HAVE BEERS TOGETHER ON A REGULAR BASIS?

A ON AT LEAST TWICE A MONTH. I DON'T KNOW IF THAT'S A REGULAR BASIS.

Q WHAT TIME DID YOU GET BACK FROM BUYING BEER?

A AROUND 12:45.

Q AND IS THAT THE POINT AT WHICH YOU HAD, BUT DID NOT CONSUME THE BEER --

A YES.

Q -- WITH MIGUEL?

WHEN YOU SAY YOU HAD IT, BUT YOU DIDN'T CONSUME IT, DID ANY OF IT GO DOWN YOUR THROAT?

A OH, YES. I'M SAYING I DIDN'T STAY OUTSIDE AND DRINKING AN ENTIRE BEER WITH HIM. HE WAS WORKING. SO I HAD SOME BEER, HAD A FEW SIPS OF THE BEER AND THEN

I WENT BACK INTO MY APARTMENT.

Q DID YOU TAKE THE BEER BACK WITH YOU INSIDE YOUR APARTMENT?

A I TOOK TWO BEERS. I TOOK ONE THAT WAS IN MY HAND AND ANOTHER BEER THAT WAS OPENED.

Q THE BEER THAT YOU HAD OPENED, DID YOU DRINK THE REST OF IT?

A I DRANK MOST OF IT.

Q AND WHEN DID YOU STOP DRINKING THAT BEER?

A WHEN IT GOT WARM.

Q WHEN WAS THE NEXT TIME YOU WENT OUTSIDE?

A AROUND THREE.

Q WHY DID YOU GO OUTSIDE AT THREE?

A I REALLY DON'T REMEMBER.

Q WHERE IS YOUR APARTMENT IN RELATIONSHIP TO WHERE VICENTE ORTIZ WAS WORKING?

A IT'S IN THE PICTURE THERE. IT WOULD BE ON THE LEFT-HAND SIDE OF THE PICTURE.

Q THIS PICTURE HERE, PEOPLE'S 1?

A THAT'S RIGHT, ON THE -- YOU CANNOT SEE IT FROM THAT PICTURE.

Q SO WOULD YOU BE ABLE TO ACCESS YOUR APARTMENT FROM THIS CONCRETE AREA THAT'S DEPICTED IN PEOPLE'S 1?

A NO.

Q WHERE IS THE ACCESS DOOR TO YOUR APARTMENT?

A ON THE OTHER SIDE. IT WOULD BE ON THE OTHER SIDE.

THE COURT: CAN YOU SPEAK UP A LITTLE BIT OR INTO THE -- PULL THE MICROPHONE.

THE DEFENDANT: THE ANSWER IS NO.

MR. FORD: OKAY.

Q SO IN ORDER FOR YOU TO GET TO THAT AREA FROM YOUR APARTMENT YOU HAVE TO WALK OUT OF THE DOOR OF YOUR APARTMENT AND THEN WALK EITHER DOWN THE SIDE OF THE HOUSE OR -- IS THAT RIGHT?

A THAT'S CORRECT.

Q OKAY. AND ABOUT HOW FAR IS THE DISTANCE FROM THE SIDE OF THE HOUSE WHERE YOUR -- THE DOOR TO YOUR HOUSE IS AND THIS AREA WHERE YOU SAY YOU SAW VICENTE?

A 20 FEET.

Q ALL RIGHT. BUT YOU DON'T REMEMBER WHY YOU WENT OUTSIDE? YOU DIDN'T HEAR ANYTHING, RIGHT?

A NO.

Q OKAY. AND YOUR TESTIMONY TODAY IS THAT YOU JUST WALKED AROUND AND HE WAS LYING ON THE GROUND LIKE HE WAS TAKING A NAP; IS THAT RIGHT?

A THAT'S RIGHT.

Q AND WHEN YOU SAW HIM, HIS BODY WAS HALFWAY OUT OF THAT LITTLE OPENING THAT'S DEPICTED ON PEOPLE'S 1, RIGHT?

A HE WAS KIND OF LAYING THERE LIKE AN ARMY GUY.

Q WHAT DO YOU MEAN "LIKE AN ARMY GUY?"

A HIS LEGS WERE IN THE CRAWL SPACE. HE WAS

JUST KIND OF LAYING LIKE -- LIKE THE PRONE POSITION, I GUESS YOU WOULD CALL IT.
Q AND YOU SAID HE WENT UP TO HIM TO SEE IF HE WAS OKAY, RIGHT?
A I DID.
Q BUT YOU DIDN'T SEE ANY BLOOD, RIGHT?
A I DON'T -- I DON'T RECALL SEEING ANY ON -- A LOT OF BLOOD. THERE MIGHT HAVE BEEN BLOOD.
Q AND AFTER YOU WALKED UP THERE, ALL YOU DID WAS ASK HIM IF HE WAS OKAY; IS THAT RIGHT?
A YES, SEVERAL TIMES.
Q DID HE EVER RESPOND?
A HE DID NOT.
Q YOU SAID THAT MR. ORTIZ STOOD UP AT SOME POINT. ABOUT HOW LONG WAS THAT AFTER YOU FIRST SAW HIM LYING THERE LOOKING LIKE HE WAS TAKING A NAP?
A YEAH. AFTER I -- I WOULD SAY TWO MINUTES, MAYBE LESS.
Q DID YOU SEE MIGUEL SAMANO AROUND WHILE YOU WERE DOING THAT?
A YES.
Q OKAY. WHERE WAS HE?
A WHEN I HAD FIRST SEEN MR. ORTIZ AT THE SCENE AND THE FIRST MAYBE TWO OR THREE TIMES I HAD SAID MID-SENTENCE "HEY, VINCENT, ARE YOU OKAY?" THAT IS WHEN I SAW MR. SAMANO.
Q AND MR. SAMANO SAID TO YOU, "OH, GOD, YOU'VE KILLED HIM," RIGHT?

A NO.
Q DID HE SAY ANYTHING?
A HE SAID "HEY, WHAT ARE YOU DOING?"
Q OKAY. DID YOU HAVE ANYTHING IN YOUR HANDS WHILE THAT WAS GOING ON?
A NO.
Q YOU DIDN'T HAVE A HAMMER IN YOUR HANDS?
A NO.
Q AND AFTER MR. SAMANO ASKED YOU WHAT YOU WERE DOING, HE SAID, "OH, YOU'VE KILLED HIM," RIGHT?
A NO, NO. HE NEVER SAID THAT TO ME.
Q SO IN BETWEEN THE TIME THAT YOU LEFT TO GO GET BEER AND CAME BACK AT AROUND, I THINK YOU SAID 12:40 IN THE AFTERNOON AND THE TIME YOU WALKED OUT OF YOUR HOUSE AGAIN AT 3:00 O'CLOCK IN THE AFTERNOON, WHAT WERE YOU DOING, WATCHING TV AGAIN?
A YES.
Q DO YOU REMEMBER WHAT YOU WERE WATCHING?
A I DID WATCH ZOOLANDER.
Q IN BETWEEN THAT TIME YOU DIDN'T HEAR ANYTHING, RIGHT?
A NO.
Q YOU DIDN'T SEE ANYBODY THAT YOU DIDN'T RECOGNIZE, RIGHT?
A NO.
Q YOU DIDN'T CONSUME THAT BEER THAT YOU PUT IN THE MINI FRIDGE, RIGHT?
A I DID NOT.

Q AND YOU WALK OUT AND SEE VICENTE, BUT YOU DIDN'T SEE ANY BLOOD. HE LOOKED LIKE HE WAS SLEEPING, CORRECT?

A THAT'S CORRECT.

Q ULTIMATELY, THE POLICE CAME AND -- CAME TO THE LOCATION AND THEY TALKED TO YOU, RIGHT?

A NO.

Q OKAY. THEY DIDN'T ASK YOU ANY QUESTIONS?

A NO.

Q THEY NEVER ADVISED YOU OF YOUR MIRANDA RIGHTS?

A THEY DID ADVISE ME OF MY MIRANDA RIGHTS AFTER THEY PUT ME IN HANDCUFFS.

Q OKAY. SO BEFORE THE TIME THEY PUT YOU IN HANDCUFFS, THEY DIDN'T SAY ANYTHING TO YOU?

A NO.

Q AND AFTER THEY PUT YOU IN HANDCUFFS, THEY ADVISED OF YOU MIRANDA RIGHTS. DID YOU TALK TO THEM AFTER THAT?

MR. THOMASON: OBJECT AS RELEVANT, NO FOUNDATION.

THE COURT: OVERRULED.

BY MR. FORD:

Q DID YOU TELL THEM ANYTHING AFTER THAT?

A THEY DIDN'T ASK ME ANYTHING OTHER THAN THE FRONT DOOR OF MY HOUSE WAS LOCKED AND I TOLD THEM I DON'T THINK IT REALLY MATTERED IF THE FRONT DOOR OF MY HOUSE WAS LOCKED. I HONESTLY COULDN'T REMEMBER IF IT WAS LOCKED. I TOLD THEM I COULDN'T REMEMBER IF IT WAS

LOCKED AND I DON'T THINK IT REALLY MATTERS. I NEVER EVER HAD ANYTHING STOLEN OUT OF THAT APARTMENT.

Q SO I DON'T WANT TO GET INTO ANY STATEMENTS OR ANY CONVERSATIONS THAT YOU MAY HAVE HAD WITH YOUR ATTORNEYS, SO GO AHEAD -- THE NEXT QUESTION I'M GOING TO ASK, TAKE ALL OF THOSE CONVERSATIONS OUT. BUT ASIDE FROM THOSE CONVERSATIONS THAT YOU MAY OR MAY NOT HAVE HAD WITH YOUR ATTORNEYS, HAVE YOU EVER TOLD ANYBODY ELSE THE STORY THAT YOU TOLD US TODAY?

MR. THOMASON: YOUR HONOR, I OBJECT. CAN WE APPROACH?

THE COURT: OKAY.

(THE FOLLOWING PROCEEDINGS WERE HELD AT SIDEBAR:)

MR. THOMASON: YOUR HONOR, I OBJECT. IT APPEARS TO BE GRIFFIN ERROR WHERE ELICITING QUESTIONS COMMENTING ON HIS FAILURE TO TELL THE POLICE THAT HE'S NOW TELLING ON THE STAND. AND I BELIEVE THAT HE ACTUALLY DIDN'T RESPOND TO THEIR ADVISEMENT, THAT HE DIDN'T SAY ANYTHING, BUT I THINK IT'S GRIFFIN ERROR TO BRING THAT OUT.

THE COURT: I ALSO THINK THERE'S AN ADDITIONAL ISSUE WHICH HE SAID HE MAY HAVE TALKED ABOUT WITH ONE OF THE PSYCHIATRISTS WHO EXAMINED HIM, SO I'M GOING TO ASK YOU TO MOVE ON.

MR. FORD: OKAY.

MR. THOMASON: IT'S NOT GRIFFIN. IT'S DOYLE.
THE COURT: THERE YOU GO.
MR. THOMASON: THANK YOU.

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)

MR. FORD: I HAVE NO FURTHER QUESTIONS.
THE COURT: ANYTHING ELSE FROM YOU, MR. THOMASON?
MR. THOMASON: NO, YOUR HONOR, THANK YOU.
THE COURT: THANK YOU.
ALL RIGHT, MR. FRISBY, YOU CAN STEP DOWN AND RESUME YOUR PLACE AT THE TABLE.
THE COURT: DOES THE DEFENSE WISH TO CALL ANY OTHER WITNESSES?
MR. THOMASON: YOUR HONOR, AFTER HAVING BEEN TO SIDEBAR, CAN WE RETURN?
THE COURT: YES.
MR. THOMASON: THANK YOU.

(THE FOLLOWING PROCEEDINGS WERE HELD AT SIDEBAR:)

MR. THOMASON: I'M NOT SURE HOW WE'RE GOING TO PROCEED. WE MIGHT CALL DETECTIVE ROMERO TO THE STAND TO IMPEACH MR. ORTIZ ABOUT THE DEFENDANT DRINKING BEER AND TEQUILA. THE PEOPLE WOULD NEED TO BRING HIM IN. I DON'T KNOW IF YOU WANT TO PROCEED BY STIPULATION OR SEE

Exibit 14

pages 6 pgs A1 and 1-5

Description: Certificate of mailing and Memorandum of Decision by Superior Court of California County of Los Angeles June 3 2019

pg 4. lines 12 and 13 Superior Court rules that a reasonable probability (was not shown) sufficient to undermine the (defendants case) outcome. Citing People v. Wharton (1991) 53 cal.3d 522, 575

but in lines 14-18 argue the reason for the decision to be argument on the grounds that intent was not established.

Superior Court failed to recognize that the act is what is in question not intent.

Petitioner is challenging the conviction of the act of assault with a deadly weapon not the intent.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br>JUN 03 2019<br>Sherri R. Carter, Executive Officer/Clerk<br>By ________, Deputy<br>D. CALLICOATTE, CLERK |
|---|---|
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012<br>Department 132 | |
| DEFENDANT:<br>MARK RAYMOND FRISBY | |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br>BA438972 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I mailed: MEMORANDUM OF DECISION

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

JUNE 03, 2019
DATED AND DEPOSITED

SHERRI R. CARTER, Executive Officer/Clerk
By: D. CALLICOATTE, Deputy Clerk

**MARK R. FRISBY, # BD8356**
**CALIFORNIA REHABILITATION CENTER**
**P.O. BOX 3535**
**NORCO CA 92860**

**LOS ANGELES COUNTY DISTRICT ATTORNEY**
**POST CONVICTION LITIGATION TEAM**
**320 W. TEMPLE STREET, SUITE 540**
**LOS ANGELES, CA 90012**

FILED
Superior Court of California
County of Los Angeles

MAY 31 2019

Sherri R. Carter, Executive Officer/Clerk
By [signature], Deputy
Derrick Callicoatte

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**CLARA SHORTRIDGE FOLTZ CRIMINAL JUSTICE CENTER**

**DEPARTMENT 132**

| | |
|---|---|
| In re<br>MARK R. FRISBY<br>Petitioner,<br>On Petition for Writ of Habeas Corpus | Case No.: BA438972<br>MEMORANDUM OF DECISION |

**IN CHAMBERS**

Petition for Writ of Habeas Corpus ("Petition") by Mark R. Frisby, *pro se* ("Petitioner"). No appearance by a respondent. Denied.

**PROCEDURAL HISTORY**

On June 22, 2017, the jury found Petitioner guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)). The jury also found true the allegation that Petitioner caused great bodily injury (§12022.7, subd. (a)). The jury acquitted Petitioner of attempted murder with premeditation (§§ 187, subd. (a); 664, subd. (a)). The trial court sentenced Petitioner to seven

[1] All further statutory references are to the Penal Code unless otherwise indicated.

years in prison. Petitioner is currently incarcerated at California Rehabilitation Center located in Norco, California.

On August 18, 2019, Petitioner filed the instant petition for writ of habeas corpus ("Petition"). Petitioner asserts the following claims: (1) the trial court improperly denied his right to self-representation; (2) trial counsel provided ineffective assistance of counsel; and (3) the trial court violated his right to a speedy trial.

## FACTUAL BACKGROUND

On August 13, 2015, Vicente Ortiz (Ortiz), a repairman, was working in the crawl space beneath an apartment building in which Petitioner lived. As Ortiz began to crawl out from the crawl space, Petitioner attacked him with a blunt force object. Ortiz suffered a fractured skull and a fractured thumb. (*People v. Frisby* (Sep. 6, 2018, B284198) [nonpub. opn.] [2018 WL 4233708], p. 1.)

## DISCUSSION

In general, Petitioner's claims are barred because they could have been raised on appeal but were not. (See *Dixon*, *supra*, 41 Cal.2d at p. 759.) In addition, the court finds that: (1) the trial court did not improperly deny Petitioner his right to self-representation; (2) trial counsel did not provide ineffective assistance of counsel; and (3) the trial court did not deny Petitioner his speedy trial rights.

1. <u>The Trial Court did not Improperly Deny Petitioner the Right to Self-Representation</u>

Petitioner claims that the trial court denied his right to self-representation, which resulted in his conviction.

"A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution. [Citations.] A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been appraised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.]

Third, he must make his request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729.)

The trial court may deny a defendant's request for self-representation if the defendant is competent to stand trial but not to represent himself or herself. (See *People v. Johnson* (2012) 53 Cal.4th 519, 523, 527 (*Johnson*), citing *Indiana v. Edwards* (2008) 554 U.S. 164, 174.) When the trial court "doubts the defendant's mental competence for self-representation, it may order a psychological or psychiatric emotion to inquire into *that* question. To minimize the risk of improperly denying self-representation to a competent defendant, 'trial courts should be cautious about making an incompetence finding without benefit of an expert evaluation, though the judge's own observations of the defendant's in court-behavior will also provide key support for an incompetence finding and should be expressly placed on the record.' [Citation.]" (*Id.* at pp. 530-531.)

Here, the court declared a doubt as to Petitioner's competency to represent himself on February 25, 2016, and the court proceedings were suspended. (Minute Order, Case No. BA438972, Feb. 25, 2016.) The court then appointed a doctor to assess Petitioner's competency to represent himself, and the doctor concluded that Petitioner was competent to stand trial but not to represent himself. (Psychiatric Report, Mar. 1, 2016, attached to Petition as exhibit 3.) The court therefore revoked Petitioner's pro per status and appointed counsel. Under *Johnson*, the court had the discretion to deny Petitioner self-representation based on his mental incompetence to represent himself. (*Johnson*, *supra*, 53 Cal.4th at p. 523.) Accordingly, the court did not improperly deny Petitioner's request for self-reprsentation.

As to Petitioner's claim that the trial court's denial of his right to self-representation resulted in his conviction, this claim is rejected as Petitioner provides no evidence to support his claim. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474, citing *People v. Karis* (1988) 46 Cal.3d 612, 656 [" 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing' "].)

//

//

2. Trial Counsel's Assistance Was Not Ineffective

Petitioner next argues that trial counsel's assistance was ineffective because trial counsel "brought excessive doubt to [his credibility] and testimony in [trial counsel]'s closing arguments." (Petition, p. 3.) Petitioner also argues that trial counsel's argument: "Wild and crazy act without someone with any particular intent whatsoever" (Reporter's Transcript, p. 169, attached to Petition as exhibit 4), destroyed any reasonable chance for a verdict of not guilty.

"To prevail on a claim of ineffective assistance of counsel, [a petitioner] must establish his attorney's representation fell below professional standards of reasonableness and must affirmatively establish prejudice. [Citations]." (*People v. Hinds* (2003) 108 Cal.App.4th 897, 900–901.) In order to establish prejudice, Petitioner must show that there is a ""reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations]." (*People v. Wharton* (1991) 53 cal.3d 522, 575.)

Here, trial counsel argued in his closing argument that Petitioner lacked the requisite intent to commit attempted murder with premeditation, and trial counsel's statement regarding a "wild and cray act" was made in support of this argument. Indeed, Petitioner was acquitted of the attempted murder charge. As such, Petitioner fails to show that he was prejudiced by counsel's closing argument, and his ineffective assistance counsel claim fails.

3. The Trial Court Did Not Deny Petitioner His Rights to a Speedy Trial.

Petitioner's arguments regarding a violation of his speedy trial rights are somewhat incomprehensible, but he appears to argue that his speedy trial rights were violated because: (1) his trial date was set for February 25, 2016, but his trial did not start on that date; (2) there was a systemic breakdown in the public defender system that resulted in the delay of his trial; and (3) the trial court failed to apply the factors set forth in *Barker v. Wingo* (1972) 407 U.S. 514.[2]

[2] *Barker v. Wingo* sets forth the four factors a court should balance in a federal speedy trial analysis: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of speedy trial rights; and (4) prejudice to the defendant. (*Barker v. Wingo*, *supra*, 407 U.S. at p. 530.) The federal speedy

"Both the state and federal Constitutions guarantee criminal defendants the right to a speedy trial (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1), 'and both guarantees operate in state criminal prosecutions....' [Citation.] Additionally, '[t]he statutory speedy trial provisions,...sections 1381 to 1389.8, are "supplementary to and a construction of" the state constitutional speedy trial guarantee.' [Citation.]" (*Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1439 (*Craft*), fn. omitted.)

Petitioner provides no evidence to support that he asserted his speedy trial rights prior to the commencement of trial. (See *People v. Wilson* (1963) 60 Cal.2d 139, 146 [the right to a speedy trial cannot be raised for the first time by a petition for habeas corpus after judgment of conviction].) Moreover, as noted above, on February 25, 2016, the court suspended the criminal proceedings to evaluate Petitioner's mental competency for self-representation. Thus, there was no violation of Petitioner's statutory speedy trial right. (See *Craft*, *supra*, 140 Cal.App.4th at p. 1539 [the statutory provisions assuring a speedy trial are suspended when the criminal proceedings have been suspended].) Petitioner's federal and state constitutional speedy trial arguments are also rejected as they are conclusory and made without a sufficient explanation. (See *People v. Duvall*, *supra*, 9 Cal.4th at p. 474.) Accordingly, Petitioner's claims are denied.

**DISPOSITION**

For the foregoing reasons, the Petition is DENIED. The clerk is ordered to serve a copy of this decision to Petitioner and the respondent.

Dated: May 31, 2019

David Herriford
Judge of the Superior Court

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Proof of Service by Mail (CCP § 1013(a) & 2015.5; 28 USC 1746)

I declare that:

I am a resident of the County of Riverside, California. I am over the age of eighteen years. My residence address is: Mark R. Frisby CDC# BD8356 210/39L P.O. Box 3535 Norco, CA 92860

On 6-21-2019 I served the attached Civil Rights Complaint by a Prisoner and Request to Proceed without Pre-Payment

on the U.S. District Court, Central District in said case, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully paid in the United States mail at Norco, CRC Prison, Norco CA 92860

addressed as follows United States District Court
Central District of California
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Attention: Pro Se Clerk.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on (date) 6-21-2019, at Norco CRC Prison, Riverside County, California.

Type or print name: Mark R. Frisby

Signature: [signature]


Norco, CA 92860
Mail Generated from
CA Rehab Center
CRC State Prison
$011.50
BOOKS
RECEIVED
CLERK, U.S. DISTRICT COURT
United States
District Court
Central District of
California
312 North Spring Street
Room G-8
Los Angeles, CA 90012
Attn: Pro se Clerk
BOOKS