1
2
3
4
5
6
7
8
9
10

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK R. FRISBY, | Case No. 5:19-cv-01249-DSF (MAA) |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| THE STATE OF CALIFORNIA DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## I.    INTRODUCTION

On July 8, 2019, Plaintiff Mark. R. Frisby ("Plaintiff"), proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.)  On August 7, 2019, the Court dismissed the Complaint with leave to amend.  (Order Dismiss. Compl., ECF No. 8.)  On October 25, 2019, Plaintiff filed a First Amended Complaint ("FAC," ECF No. 12), which the Court dismissed with leave to amend on December 9, 2019 (Order Dismiss. FAC, ECF No. 12).  After an eleven-month delay in which Plaintiff failed to comply with Court orders to file a FAC and failed to prosecute the lawsuit, Plaintiff filed a Second Amended Complaint ("SAC") on November 2, 2020.  (SAC, ECF No. 34.)

The Court has screened the SAC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  For the reasons stated below, the SAC is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Third Amended Complaint ("TAC"), or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a TAC.

## II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS[1]

The SAC is filed against the following defendants:  (1) Officer Ruiz, clinician or psychologist at Los Angeles County Twin Towers Jail ("LACJ"); (2) L. Smith, officer at San Bernardino County Jail ("SBCJ"); (3) Lloyd, officer at SBCJ; and (4) Judge Leslie Swain, Superior Court Judge presiding over Plaintiff's case #BA438972 ("State Case") (each, a "Defendant," and collectively, "Defendants"). (SAC 4–5.)[2]  Each Defendant is sued in his or her official capacity.  (*Id*.)

As part of the procedure set forth by SBCJ for confinement of prisoners found unfit for trial and as part of the procedure enforcing the mental health assessment program, Defendants Lloyd and Smith denied Plaintiff the ability to file a writ of habeas corpus to challenge the legality and conditions of his confinement.  (*Id*. at 6–7.)  Defendants Lloyd and Smith made these denials to Plaintiff every time Plaintiff spoke with them—several times per week, five or six days per week, over one hundred days.  (*Id*.)  Defendant Lloyd told Plaintiff, "Sorry, we do not have that option here."  (*Id*. at 6.)  Defendant Smith told Plaintiff that he was not allowed a writ of habeas corpus because he was unfit for trial.  (*Id*. at 7.)  Challenges contemplated by Plaintiff included "conditions of confinement, legality, lack of evidence, factual innocence, speedy trial, right to representation, Faretta rights,

---

[1] The Court summarizes Plaintiff's allegations and claims as set forth in the SAC, without opining on their veracity or merit.

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

affordable bail, misdiagnosis and challenges to double jeopardy charges of assault with a deadly weapon as an element of the primary offense (which [Plaintiff] is not guilty of) of attempted murder." (*Id*. at 6–7.) Such challenges can no longer be filed or remedied via writ of habeas corpus due to the statutes of limitation and because Plaintiff's State Case is now finalized. (*Id*.)

As part of the procedure set forth by LACJ for confinement of prisoners found not fit for trial and as part of the procedure enforcing mental health assessment, Defendant Ruiz denied Plaintiff the ability to file a writ of habeas corpus to challenge the legality and conditions of his confinement. (*Id*. at 8.) Plaintiff was denied a writ of habeas corpus every time he spoke with Defendant Ruiz between August 13, 2015 and July 17, 2017. (*Id*.) Defendant Ruiz told Plaintiff that he was unfit and had mental health issues and therefore was not authorized to assert the writ of habeas corpus challenges. (*Id*.) Challenges contemplated by Plaintiff included "challenges to the conditions of confinement, challenges to the legality of confinement due to lack of evidence, factual innocence, speedy trial, right to representation, right to self[-]representation, Faretta, bail, affordable bail, challenges to his diagnosis, challenges to double jeopardy charges of assault with a deadly weapon as an element of the primary offense (which [Plaintiff] is not guilty of) of attempted murder." (*Id*.) Such challenges can no longer be filed or remedied via writ of habeas corpus due to the statutes of limitation and because Plaintiff's State Case is now finalized. (*Id*.)

As part of SBCJ's mental health assessment program procedure, Defendants Smith and Lloyd refused to let Plaintiff out of a cell for over 100 days straight for any reason. (*Id*. at 9–10.) Plaintiff requested showers, medical treatment, hygiene products, and outdoor exercise several times per day, five or six days per week from Defendants Smith and Lloyd. (*Id*.) Defendant Smith refused Plaintiff's requests every time, often responding "sorry, you're unfit," or simply ignoring the request. (*Id*. at 9.) Defendant Lloyd also refused Plaintiff's request every time, often

responding "sorry, we do not have that option here." (*Id*. at 10.)  The deprivation resulted in a skin rash that developed over twenty days and spread all over Plaintiff's body for eighty days.  (*Id*. at 9–10.)  The rash was severe and unbearable and made Plaintiff unit for trial.  (*Id*.)  The rash required intensive medical treatment.  (*Id*.)  Plaintiff suffered severe emotional and physical pain after forty-two days of continuous denial of outdoor exercise, followed by another fifty-eight days of denial of outdoor exercise.  (*Id*.)

As part of the policies set forth by LACJ for confinement of prisoners found unit for trial, Defendant Ruiz of LACJ ordered Plaintiff to be kept in administrative segregation for over one year between August 13, 2015 and July 17, 2015.[3]  (*Id*. at 11.)  Plaintiff was denied clothing, hygiene products, and blankets on every occasion.  (*Id*.)  Plaintiff suffered pneumonia from the cold without blankets, which went untreated.  (*Id*.)  Plaintiff was threatened with genital mutilation every time he requested adequate food, clothing, to be placed in general population, access to the courts, and medical treatment.  (*Id*.)  Plaintiff's requests for grievance forms also were denied.  (*Id*.)  Plaintiff lost thirty pounds as a result of malnourishment and lack of exercise.  (*Id*.)  Plaintiff suffered visible physical and emotional trauma from the deprivation and has never fully recovered.  (*Id*.)

Defendant Swain denied Plaintiff adequate confinement and the ability to file writs of habeas corpus in the State Case.  (*Id*. at 12.)  Plaintiff verbally reported violations made by Los Angeles County and San Bernardino County officers to Defendant Swain since Plaintiff was physically restrained.  (*Id*.)  Defendant Swain ignored the reports and ordered Plaintiff to be returned to the same conditions and to be forced on medication if necessary.  (*Id*.)  Defendant Swain was aware of the violations to Plaintiff's civil rights by Los Angeles County and San Bernardino

---

[3] This date appears to be an error, as July 17, 2015 cannot follow August 13, 2015. The SAC previously alleged that Plaintiff was at LACJ from August 13, 2015 to July 17, 2017.  (*See* SAC 8.)

County.  (*Id*.)  Defendant Swain acted outside her jurisdiction since Plaintiff refused to waive his right to a speedy trial and representation, and more than ninety days had passed.  (*Id*.)  Defendant Swain denied Plaintiff the ability to file a writ of habeas corpus, obtain safe living conditions, and obtain a dismissal of charges in the State Case, in which Plaintiff was found not guilty of the primary offense.  (*Id*.)

Based on the foregoing, Plaintiff asserts multiple violations of the First Amendment and Eighth Amendment.  (*Id*. at 6–12.)  Plaintiff seeks $1,000,000 from Los Angeles County and San Bernardino County for the severe emotional trauma and physical pain to which he was subjected.  (*Id*. at 13.)

## III.   LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id*. (quotations omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

1

## IV.   DISCUSSION

### A.   Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The SAC asserts claims for violations of the First Amendment and Eighth Amendment. (SAC 6–12.) As discussed below, the SAC potentially states an Eighth Amendment cruel and unusual punishment claim against Defendants Lloyd and Smith in their official capacities for denial of outdoor exercise, but not with respect to denials of showers and hygiene products. The SAC also does not state an Eighth Amendment cruel and unusual punishment claim against Defendant Ruiz in his or her official capacity, a First and Fourteenth Amendments access-to-court claim against any Defendant, an Eighth Amendment claim for deliberate indifference to serious medical needs against any Defendant, or any claims against Defendant Swain.

### B.   Defendant Swain Is Immune From Suit.

The SAC sues Defendant Swain in her official capacity for monetary damages. (SAC 5, 13.) A suit against a defendant in his or her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes

7

under color of state law . . . .  Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  The SAC alleges that Defendant Swain is a Superior Court Judge.  (SAC 5.)  The official capacity claim against Defendant Swain therefore is treated as a claim against the State of California.  *See Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1998) (explaining that a lawsuit against state officials in their official capacities was a lawsuit against the state).  California is not a "person" subject to Section 1983, and the Eleventh Amendment bars damages actions against state officials in their official capacity.  *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007).  As such, the official capacity claim against Defendant Swain fails.

If Plaintiff amends his complaint to sue Defendant Swain in her individual capacity, such claim also would fail.  In their individual capacity, judicial immunity protects judges from civil liability for damages for their judicial acts.  *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  An act is judicial in nature if "it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  A "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."  *Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (quoting *Stump*, 435 U.S. at 356).  A judge will be stripped of absolute judicial immunity only where he or she "acts in the clear absence of all jurisdiction."  *Id.* (quoting *Stump*, 435 U.S. at 356–57) (quotation marks omitted).

Here, the SAC alleges that Defendant Swain ignored Plaintiff's verbal complaints regarding his conditions of confinement and violations by Los Angeles County and San Bernardino County; ordered that Plaintiff be returned to the same

conditions; ordered that Plaintiff be forced on medication if necessary; denied Plaintiff the ability to file writs of habeas corpus; and denied Plaintiff the ability to obtain dismissal of the charges in the State Case.  (SAC 12.)  As the Court previously advised Plaintiff (*see* Order Dismiss. FAC 5–6), the issuance of orders is "beyond dispute" a judicial act for which Defendant Swain is entitled to absolute immunity.  *See, e.g., Kinney v. Cantil-Sakauye*, No. 17-cv-01607-DMR, 2017 U.S. Dist. LEXIS 215439, at *13 (N.D. Cal. Aug. 21, 2017) (finding that state court judges are absolutely immune with respect to issuance of adverse orders).  Despite the SAC's conclusory allegation that Defendant Swain "acted outside her jurisdiction" (SAC 12), there are no allegations from which it could be inferred that Defendant Swain was acting in the "clear absence of all jurisdiction," such that judicial immunity would not apply.  *See Asheman*, 793 F.2d at 1075–76 ("To determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction."); *see also Iqbal*, 556 U.S. at 678 (explaining that conclusory allegations are insufficient to state a claim).

For these reasons, judicial immunity protects Defendant Swain from damages liability.  The Court previously explained Eleventh Amendment sovereign immunity and judicial immunity to Plaintiff.  (*See* Order Dismiss. Compl. 5; Order Dismiss. FAC 5–6.)  If Plaintiff files an amended complaint with damages claims against Defendant Swain, such claims will be subject to dismissal.

### C.   Claims Against Los Angeles County and San Bernardino County

The SAC sues Defendants Ruiz, Smith, and Lloyd only in their official capacities.  (SAC 3–4.)  Official capacity suits in essence constitute actions against the entity of which an officer is an agent.  *See Kentucky*, 473 U.S. at 165.  As the SAC alleges that Defendants Smith and Lloyd are employees of SBCJ (SAC 4), the claims against them in their official capacities are treated as claims against San

Bernardino County.  *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) (explaining that when a county official is sued in his official capacity, the claims against him are claims against the entity).  As the SAC alleges that Defendant Ruiz is an employee of LACJ (SAC 4), the official capacity claims against him or her are treated as claims against Los Angeles County.  *See Mendiola-Martinez*, 836 F.3d at 1250.

"A municipality or other local government [including counties] may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692). However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).  "A municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 690–91; *accord Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts.  They are not vicariously liable under § 1983 for their employees' actions." (quotations and citations omitted)).

"In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  A rule or regulation "promulgated, adopted, or ratified by a local governmental entity's legislative body" constitutes a municipal policy. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc).  "A policy has been defined as 'a deliberate

10

choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010) (alteration in original) (quoting *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). "[I]n addition to an official policy, a municipality may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (quotations omitted) (citing *Monell*, 436 U.S. at 690–91). However, liability for a custom will attach only if a plaintiff pleads that his or her injury resulted from a "permanent and well-settled" practice. *Thompson*, 885 F.2d at 1444. Allegations of random acts or isolated events are insufficient to establish a municipal custom. *Navarro*, 72 F.3d at 714.

Furthermore, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Municipal policy "'causes' an injury where it is the 'moving force' behind the constitutional violation, or where 'the [municipality] itself is the wrongdoer.'" *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citations omitted). The municipal policy "need only cause a constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992). Below the Court examines whether the SAC successfully states any claims against Los Angeles County and San Bernardino County.


### D.     First and Fourteenth Amendments Access-To-Courts

"[T]he right of access to the courts is a fundamental right protected by the Constitution." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (alteration in original) (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998)). Prisoners have a constitutional right of access to the courts,

11

protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356–57.

To state a claim for denial of access to the courts, a plaintiff must establish that he or she suffered an "actual injury"—that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." *Id.* Even if delays in providing legal materials or assistance result in actual injury, they are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362.

Claims for denial of access to courts may arise from either the frustration of "a litigating opportunity yet to be gained" (a forward-looking claim), or from "an opportunity already lost" (a backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). In either case, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. "[T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Thus, a plaintiff must allege: (1) a "nonfrivolous," "arguable" underlying claim, pled "in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued"; (2) the official acts that frustrated the litigation of that underlying claim; and (3) a plain statement

1

2    describing the "remedy available under the access claim and presently unique to it."

3    *Id*. at 415–18.

4         The SAC alleges that Defendants Lloyd, Smith, and Ruiz denied Plaintiff the

5    ability to file writs of habeas corpus to challenge the legality and conditions of his

6    confinement.  (SAC 6–8.)  Challenges contemplated by Plaintiff included challenges

7    to the conditions of confinement, legality of his confinement, lack of evidence,

8    factual innocence, speedy trial, rights to representation and self-representation,

9    Faretta rights, bail and affordable bail, challenges to his diagnosis, and "challenges

10   to double jeopardy charges of assault with a deadly weapon as an element of the

11   primary offense (which [Plaintiff] is not guilty of) of attempted murder."  (*Id*.)  The

12   SAC also alleges that Plaintiff's requests for grievance forms were denied while he

13   was at LACJ.  (*Id*. at 11.)

14        These allegations are too general and do not sufficiently state the nonfrivolous

15   legal argument or claim Plaintiff was prevented from asserting.  Plaintiff must plead

16   a nonfrivolous, arguable underlying claim, pled in accordance with Rule 8, "just as if

17   it were being independently pursued."  *Harbury*, 536 U.S. at 417.  A prisoner's right

18   to access courts does not include the right to present frivolous claims.  *See Lewis*,

19   518 U.S. at 353 n.3 ("Depriving someone of an arguable (though not yet established)

20   claim inflicts actual injury because it deprives him of something of value—arguable

21   claims are settled, bought, and sold.  Depriving someone of a frivolous claim, on the

22   other hand, deprives him of nothing at all, except perhaps the punishment of Federal

23   Rule of Civil Procedure 11 sanctions.").  A list of general challenges (SAC 6–8)

24   without further details, or failing to even describe the issues Plaintiff was prevented

25   from grieving (*id*. at 11), does not suffice.

26        In addition, with respect to the alleged denial of grievance forms at LACJ, the

27   SAC does not state the actual injury Plaintiff suffered as a result of such denials.

28   Plaintiff must identify the actual prejudice he suffered as a result of being denied

13

grievance forms. *See Nev. Dep't of Corr.*, 648 F.3d at 1018 (Actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.").

For these reasons, Plaintiff's First and Fourteenth Amendments access-to-court claims fails. The Court previously explained the deficiencies of Plaintiff's access-to-court claims in two separate orders. (*See* Order Dismiss. Compl. 13–15; Order Dismiss. FAC 8–11.) If Plaintiff files an amended complaint with access-to-court claims, he must correct these deficiencies or risk their dismissal.

### E.    Eighth Amendment Cruel and Unusual Punishment

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to evolving standards of decency that mark the progress of a maturing society." *Id.* (quotation marks and citations omitted).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen*, 48 F.3d at 1087). "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."

14

*Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'"  *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982)).  Second, subjectively, the prison official must act with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

### 1.    Defendants Lloyd and Smith (San Bernardino County)

The SAC alleges that as part of SBCJ's mental health assessment program procedure, Defendants Smith and Lloyd refused to let Plaintiff out of a cell for any reason for over 100 days.  (SAC 9–10.)  Plaintiff requested showers, medical treatment, hygiene products, and outdoor exercise several times per day, five or six days per week from Defendants Smith and Lloyd.  (*Id.*)  Plaintiff was deprived of outdoor exercise continuously for forty-two days, followed by another fifty-eight days of denial of outdoor exercise.  (*Id.*)  Defendant Smith refused Plaintiff's requests every time, often responding "sorry, you're unfit," or simply ignoring the request.  (*Id.* at 9.)  Defendant Lloyd also refused Plaintiff's request every time, often responding "sorry, we do not have that option here."  (*Id.* at 10.)  As a result of the deprivations, Plaintiff suffered a rash that spread all over Plaintiff's body for eighty days and severe emotional and physical pain.  (*Id.* at 9–10.)

### a.    *Outdoor Exercise*

"[E]xercise has been determined to be one of the basic human necessities protected by the Eighth Amendment."  *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)).  Long-

15

term denial of outdoor exercise is unconstitutional.  *LeMaire*, 12 F.3d at 1458.  This protection applies to "inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

The SAC alleges that Plaintiff was not allowed out of his cell for any reason for over one hundred days, and that he continuously was deprived of outdoor exercise for forty-two days, followed by another fifty-eight days.  (SAC 9–10.) These allegations satisfy the objective prong of the Eighth Amendment.  *See, e.g., Lopez*, 203 F.3d at 1132–33 (holding that deprivation of outdoor exercise for six and a half weeks meets the objective requirement of the Eighth Amendment); *Allen*, 48 F.3d at 1087–88 (holding that objective requirement of Eighth Amendment was met where prisoner alleged that during a six-week period, he had been allowed only forty-five minutes of outdoor exercise per week); *Ekene v. Cash*, No. CV11-9318-DDP (DTB), 2013 U.S. Dist. LEXIS 81952, at *20–21 (C.D. Cal. Jan. 8, 2013) (concluding that plaintiff sufficiently stated an Eighth Amendment claim against defendant correctional officer based on deprivation of out-of-cell exercise and showers for three months).

As to the subjective prong, the SAC alleges that Plaintiff was not allowed out of his cell for one hundred days as part of SBCJ's mental health assessment procedure, that Plaintiff was denied outdoor exercise for a period of forty-two continuous days followed by fifty-eight more days, that Plaintiff repeatedly requested outdoor exercise several times a day during this time, and that Defendants Lloyd and Smith denied every such request.  (SAC 9–10.)  These allegations are sufficient to lead to the reasonable inference that San Bernardino County should have been aware that the denial of outdoor exercise to Plaintiff for one hundred days posed a risk of harm to Plaintiff, and that San Bernardino County had a procedure or custom of denying inmates at SBCJ's mental health assessment program access to outdoor exercise.  *See, e.g., Turner v. Ahern*, No.: 12-cv-6174 KAW, 2013 U.S.

Dist. LEXIS 84273, at *15–16 (N.D. Cal. June 14, 2013) (concluding that plaintiff sufficiently alleged *Monell* claim for prisoner's subjection to unconstitutional exercise policy).

For these reasons, the SAC states an Eighth Amendment cruel and unusual punishment claim against Defendants Smith and Lloyd in their official capacities for the deprivation of outdoor exercise.

b.     *Sanitation: Showers and Hygiene Products*

The Eighth Amendment requires prison officials to provide inmates adequate sanitation, *Johnson*, 217 F.3d at 731, which includes the right to showers, *see, e.g., Toussaint v. McCarthy*, 801 F.2d 1080, 1110–11 (9th Cir. 1986), and the right to personal hygiene supplies such as toothbrushes and soap, *see Keenan*, 83 F.3d at 1091. "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995).

The SAC alleges that as part of SBCJ's mental health assessment program procedure, Plaintiff was not allowed out of his cell for any reason for over one hundred days, that Defendants Smith and Lloyd denied Plaintiff's requests for showers and hygiene products, and that Plaintiff developed a painful rash all over his body. (SAC 9–10.) These allegations potentially could be the basis of an Eighth Amendment claim. However, the SAC does not contain enough allegations to conclude that the denials of showers and hygiene products were an objectively sufficiently serious deprivation, as it does not detail how many showers and hygiene products were provided to Plaintiff during the one-hundred-day period. *See Baptisto v. Ryan*, No. CV 03-1393-PHX-SRB, 2005 U.S. Dist. LEXIS 22295, at *43, 2005 WL 2416356, at *13 (D. Ariz. Sept. 30, 2005) ("[A] prison that limits the number of showers an inmate can take does not necessarily violate an inmate's Eighth

17

Amendment rights unless the number of showers is so limited as to deny the inmate his right to basic sanitation."). If Plaintiff includes this claim in any amended complaint, he should provide additional details, including the number of showers he was permitted to take each week (if any) and the amount of hygiene products he was provided (if any). If Plaintiff's claim is that he was not permitted to take any showers and was denied any hygiene products for one hundred days, Plaintiff should so clarify in any amended complaint, as that would be sufficient to satisfy the objective prong of the Eighth Amendment. *See, e.g., Ekene*, 2013 U.S. Dist. LEXIS 81952, at *20–21 (concluding that plaintiff sufficiently stated an Eighth Amendment claim against defendant correctional officer based on deprivation of showers—and out-of-cell exercise—for three months).

For these reasons, the SAC fails to state an Eighth Amendment cruel and unusual punishment claim against Defendants Smith and Lloyd in their official capacities for the deprivation of showers and hygiene products. If Plaintiff files an amended complaint with this claim, he must correct these deficiencies or risk its dismissal.

### 2.   Defendant Ruiz (Los Angeles County)

The SAC alleges that as part of the policies set forth by LACJ for confinement of prisoners found unit for trial, Defendant Ruiz ordered Plaintiff to be kept in administrative segregation for over one year as part of the policies set forth by LACJ for prisoners found unfit for trial; that Plaintiff was denied clothing, hygiene products, and blankets; and that Plaintiff was threatened with genital mutilation every time he requested adequate food, clothing, to be placed in general population, access to the courts, and medical treatment. (SAC 11.)

///

///

///

1          a.     *Administrative Segregation*

2          Administrative segregation does not violate the Eighth Amendment's

3   prohibition against cruel and unusual punishment.  *See Anderson*, 45 F.3d at 1316.

4   Rather, administrative segregation "is within the terms of confinement ordinarily

5   contemplated by a sentence."  *Id*.  "[P]rison officials have a legitimate penological

6   interest in administrative segregation, and they must be given 'wide-ranging

7   deference in the adoption and execution of policies and practices that in their

8   judgment are needed to preserve internal order and discipline and to maintain

9   institutional security.'"  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979));

10  *see also France v. Allman*, No. 15-cv-04078-JSC, 2016 U.S. Dist. LEXIS 178843, at

11  *9 (N.D. Cal. Dec. 17, 2016) ("Plaintiff's administrative segregation . . . does not

12  violate the Eighth Amendment because placement in administrative segregation,

13  even for an indeterminate term, does not constitute cruel and unusual punishment in

14  violation of the Eighth Amendment.").

15         For these reasons, the SAC does not state an Eighth Amendment claim against

16  Defendant Ruiz in his or her official capacity for Plaintiff's placement in

17  administrative segregation.  The Court previously informed Plaintiff that

18  administrative segregation in and of itself does not violate the Eighth Amendment.

19  (*See* Order Dismiss. FAC 13.)  If Plaintiff includes this claim in any amended

20  complaint, it will be subject to dismissal.

21

22         b.     *Clothing, Hygiene Products, Blankets*

23         The SAC alleges that as part of the policies set forth in LACJ for confinement

24  of prisoners found unfit for trial, Plaintiff was denied clothing, hygiene products,

25  and blankets, and that Plaintiff suffered from pneumonia as a result of the denial of

26  blankets.  (SAC 11.)

27         These types of deprivations can be the basis for an Eight Amendment claim.

28  "The denial of adequate clothing can inflict pain under the Eighth Amendment."

*Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Hoptowit*, 682 F.2d at 1246)), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995)).  In addition, "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson*, 45 F.3d at 1314; *see also Johnson*, 217 F.3d at 731 (stating that prison officials have a duty to ensure that prisoners are provided adequate sanitation).  Finally, the "'Eighth Amendment guarantees adequate heating' but not necessarily a 'comfortable' temperature." *Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) (per curiam) (quoting *Keenan*, 83 F.3d at 1091).

However, the SAC does not contain sufficient allegations to lead to the reasonable inference that such deprivations of clothing, hygiene products, and blankets were objective sufficiently serious.  If Plaintiff includes an Eighth Amendment claim regarding these conditions in an amended complaint, Plaintiff should add additional factual allegations, including their "circumstances, nature, and duration." *See Johnson*, 217 F.3d at 731 ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. The more basic the need, the shorter the time it can be withheld.") (quotations omitted)).  Specifically, Plaintiff should provide additional details regarding the amount of clothing, hygiene products, and blankets Plaintiff was provided at LACJ; the frequency with which such items were provided; any facts that would support the reasonable inference that the clothing, hygiene products, and blankets provided were inadequate; the period of time Plaintiff suffered such inadequacies; and the effects on Plaintiff as a result of such alleged inadequacies.

For these reasons, the SAC does not state an Eighth Amendment claim against Defendant Ruiz in his or her official capacity for the alleged denials of clothing, hygiene products, and blankets.  The Court previously explained the deficiencies of Plaintiff's Eighth Amendment claims, and specifically with respect to such claims

based on denial of clothing and hygiene products.  (*See* Order Dismiss. Compl. 9–
10.)  If Plaintiff asserts such claim in any amended complaint, Plaintiff must correct
these deficiencies or risk its dismissal.

c.   *Verbal Abuse*

Verbal harassment or abuse is not sufficient to state a constitutional
deprivation under Section 1983.  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th
Cir. 1987).  "Although prisoners have a right to be free from sexual abuse, whether
at the hands of fellow inmates or prison guards, the Eighth Amendment's protections
do not necessarily extend to mere verbal sexual harassment."  *Austin v. Terhune*, 367
F.3d 1167, 1171–72 (9th Cir. 2004) (citations omitted) (affirming district court's
grant of summary judgment on Eighth Amendment claim where defendant did not
physically touch prisoner).

The SAC alleges that Plaintiff was "threatened with genital mutilation" every
every time he requested adequate food, clothing, to be placed in general population,
access to the courts, and medical treatment.  (SAC 11.)  As the SAC does not allege
any physical contact in connection with such verbal abuse, these allegations are not
sufficiently serious to constitute an Eighth Amendment violation.  *See Austin*, 367
F.3d at 1172.  In addition, Los Angeles County cannot be held liable under Section
1983 on *a respondeat superior* theory of liability for the statements of unnamed
LACJ officers.  *See Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments
are responsible only for their *own* illegal acts.  They are not vicariously liable under
§ 1983 for their employees' actions." (quotations and citations omitted)).  There are
no allegations in the SAC by which it reasonably could be inferred that such threats
were made pursuant to the policy, practice, or custom of Los Angeles County.  *See
Castro*, 833 F.3d at 1073 ("In order to establish municipal liability, a plaintiff must
show that a 'policy or custom' led to the plaintiff's injury.") (quoting *Monell*, 436
U.S. at 694)).

1    For these reasons, the SAC does not state an Eighth Amendment claim against

2  Defendant Ruiz in his or her official capacity due to verbal harassment.  The Court

3  previously explained the deficiencies of this claim in two separate orders.  (*See*

4  Order Dismiss. Compl. 10; Order Dismiss. FAC 14.)  If Plaintiff asserts such claim

5  in any amended complaint, Plaintiff must correct these deficiencies or risk its

6  dismissal.

7

8        **F.    Eighth Amendment Deliberate Indifference to Serious Medical Need**

9    "The government has an 'obligation to provide medical care for those whom it

10  is punishing by incarceration,' and failure to meet that obligation can constitute an

11  Eighth Amendment violation cognizable under § 1983."  *Colwell v. Bannister*, 763

12  F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05

13  (1976)).  "To maintain an Eighth Amendment claim based on prison medical

14  treatment, an inmate must show 'deliberate indifference to serious medical needs.'"

15  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at

16  104).  A plaintiff must allege sufficient facts to satisfy a two-prong test:  (1) an

17  objective standard—the existence of a serious medical need; and (2) a subjective

18  standard—deliberate indifference.  *See id*.

19    A "serious medical need" exists if "failure to treat a prisoner's condition

20  could result in further significant injury or the 'unnecessary and wanton infliction of

21  pain.'"  *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

22  *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133

23  (9th Cir. 1997) (en banc)).  Neither result is the type of "routine discomfort [that] is

24  'part of the penalty that criminal offenders pay for their offenses against society.'"

25  *McGuckin*, 974 F.2d at 1059 (alteration in original) (quoting *Hudson v. McMillian*,

26  503 U.S. 1, 9 (1992)).  "The existence of an injury that a reasonable doctor or

27  patient would find important and worthy of comment or treatment; the presence of a

28  medical condition that significantly affects an individual's daily activities; or the

existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059–60.

The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059. However, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. The defendant "must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *See McGuckin*, 974 F.2d at 1060.

### 1.    Defendants Lloyd and Smith (San Bernardino County)

The SAC alleges that while Plaintiff was being held at SBCJ, Plaintiff developed a skin rash that spread all over his body for eighty days, and that the rash was "painful," "severe," "unbearable," and made Plaintiff unfit for trial. (SAC 9–10.) The SAC alleges that Plaintiff requested medical treatment from Defendants Smith and Lloyd, but that his requests were denied. (*Id.*)

Some courts in this circuit have concluded that a rash is not a "serious medical need." *See, e.g., Thompson v. Paleka*, No. 17-00531 SOM-KJM, 2017 U.S. Dist. LEXIS 187206, at *12–13 (D. Haw. Nov. 13, 2017) (concluding that rash did not present a serious medical need where plaintiff did not detail where it was located or how widespread or severe it was); *Robben v. El Dorado County*, No. 2:16-cv-2697 JAM KJN P, 2017 U.S. Dist. LEXIS 88368, at *11 (E.D. Cal. June 8, 2017) (concluding that plaintiff failed to allege facts demonstrating that his rash

was a serious medical need).  However, Plaintiff alleges that his rash spread all over his body for eighty days and was painful, severe, and unbearable.  (SAC 9–10.) These allegations describe a condition that would be worthy of treatment, and thus likely satisfies the objective prong of the Eighth Amendment.  *See Ellis v. Corizon Inc.*, No. CV 17-00536-PHX-SPL (JFM), 2018 U.S. Dist. LEXIS 230554, at *10– 11 (D. Ariz. Sept. 14, 2018) (concluding that rash was serious medical need where plaintiff described rash as chronic and painful and plaintiff was diagnosed with scabies).

Nonetheless, the SAC fails to satisfy the subjective deliberate indifference prong with respect to San Bernardino County.  The allegations related to the rash are few, and there are no allegations that suggest that San Bernardino had any knowledge of Plaintiff's rash.  (*See* SAC 9–10.)  However, deliberate indifference requires knowledge and disregard of an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  Furthermore, the SAC does not contain sufficient allegations from which it can be inferred that any alleged denials of medical care for the rash resulted from San Bernardino County's policy, practice, or custom.  *See Castro*, 833 F.3d at 1073 (explaining that municipal liability attaches only where a policy or custom led to the plaintiff's injury); *see also Navarro*, 72 F.3d at 714 ("Proof of random acts or isolated events are insufficient to establish custom.").

For these reasons, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Smith and Lloyd in their official capacities.  If Plaintiff includes these claims in any amended complaint, he must correct these deficiencies or risk their dismissal.

### 2.   Defendant Ruiz (Los Angeles County)

The SAC alleges that while Plaintiff was at LACJ, Plaintiff suffered from pneumonia, which went untreated.  (SAC 11.)

///

Pneumonia likely would qualify as a serious medical need.  *See, e.g., Nester v. Arpaio*, No. CV 06-1457-PHX-SMM (GEE), 2008 U.S. Dist. LEXIS 111220, at *16 (D. Ariz. Aug. 7, 2008) ("pneumonia is a serious condition worthy of treatment"). However, the SAC does not contain any details of the pneumonia, including Plaintiff's symptoms and their severity, the amount of time Plaintiff was sick, and how he diagnosed his illness as pneumonia if it was untreated.  (*See* SAC 11.)  In addition, as with the Eighth Amendment deliberate indifference claim against San Bernardino County (*see* Section IV.F.1, *supra*), the sparse allegations in the SAC do not provide any details regarding Los Angeles County's knowledge (if any) of Plaintiff's pneumonia, and are insufficient to lead to the reasonable inference (1) that Los Angeles County acted with deliberate indifference, and (2) that such acts were the result of a policy, practice, or custom, as is required to impose Section 1983 liability on Los Angeles County.

For these reasons, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant Ruiz in his or her official capacity.  If Plaintiff includes this claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

## V.   CONCLUSION

For the reasons stated above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**.  Plaintiff may have an opportunity to amend and cure the deficiencies given his *pro se* prisoner status.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a TAC, or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a TAC.

The TAC must cure the pleading defects discussed above and shall be complete in itself without reference to the SAC.  *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding

pleading."). This means that Plaintiff must allege and plead any viable claims in the TAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the SAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a TAC, or timely advise the Court that Plaintiff does not intend to file a TAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g). Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that the undersigned Magistrate Judge's determination herein that the allegations in the SAC are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the

undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then, pursuant to 28 U.S.C. § 636, the undersigned Magistrate Judge ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: November 23, 2020

_____

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal

27